**EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN and Army & Air Force Post Exchange Service, Employer, Plaintiffs,**

v.

**Phillip F. ARRIEN, Deputy Commissioner, Second Compensation District, Bureau of Employees Compensation, United States Department of Labor, and Alfred Meegan, Defendants.**

Civ. No. 65–CV–80.

United States District Court
N. D. New York.

Argued May 27, 1965.

Decided July 22, 1965.

©﹣376

O'Shea, Griffin, Jones & McLaughlin, Rome, N. Y., and Louis V. Caronna, New York City, for plaintiffs.

Justin J. Mahoney, U. S. Atty., Syracuse, N. Y., and Charles Donahue, Sol. of Labor, Neil R. Peterson, Alfred H. Myers, Attys., Dept. of Labor, Washington, D. C., for defendants, James P. Shanahan, Asst. U. S. Atty., of counsel.

BRENNAN, Senior District Judge.

The decision in this litigation essentially involves the interpretation and application of the provisions of 5 U.S.C. § 150k-1, known as the Nonappropriated Fund Instrumentalities Act, to an undisputed state of facts. The inquiry is directed as to whether or not the provisions of the above Act are available to a member in the active military service of the United States Air Force who sustained a disabling injury while performing a non-military service, in his off military duty hours, at the Base Tavern, located at Griffiss Air Force Base, Rome, New York. A summary of the factual background is set out below.

Alfred Meegan, hereinafter referred to as the claimant, was at all pertinent times an active member of the United States Air Force stationed at Griffiss Air Force Base, Rome, New York. His regular daily military duty hours ended about 3:45 P.M. On August 1, 1963, upon completion of his military duty tour, he changed to civilian clothes and proceeded to the Base Tavern which was a part of the Army and Air Force Exchange Services at the Air Base. For some time, he had been employed in his off-duty hours as a bartender in the above facility with the consent of his superior officer and in accordance with military regulations. His average earnings from such employment were $31.50 per week. On the above date, he assumed his duties at the tavern and, while placing beer in a cooler, one of the bottles exploded as the result of which particles of glass lodged in claimant's right eye sustaining a severe injury thereto. He was removed to a non-military hospital at Utica, New York and within a day or two was transferred to a military hospital at the Rome Air Base. He was afforded hospitalization and medical treatment for the injury at that and another military hospital for which no charge or claim was made. Claimant's right eye was subsequently enucleated, as the result of the injury. The claimant was totally disabled from August 2, 1963 to November 27, 1963 on which date he was retired from the United States Air Force on account of the disability resulting from the injury, referred to above. Claimant was thereupon awarded disability retirement benefits under the provisions of military regulations or statutes.

Under date of September 19, 1963, the claimant filed a claim for compensation, for said injury, invoking the provisions of the Longshoremen's and Harbor Workers' Compensation Act and the provisions of 5 U.S.C. § 150k-1, mentioned above. The claim was controverted by the employer and compensation carrier who are the plaintiffs in this action. In accordance with the statute, a hearing was held

on September 14, 1964. The claimant's testimony, as partially summarized above, was in no way disputed. The compensation insurance carrier and the employer offered in evidence several Air Force and Army regulations which they urge are indicative that the claimant is not covered as a "civilian employee" under the statute. The testimony also developed that there was a difference of opinion between those in authority in the Army and Air Force Exchange Service and the Bureau of Employees Compensation as to whether or not the claimant, under the circumstances disclosed, was within the coverage afforded by the Act.

The Deputy Commissioner found in a compensation order, subsequently issued, that claimant was an employee within the meaning of the Nonappropriated Fund Instrumentalities Act at the time of the injury referred to above and is entitled to the benefits provided thereunder. Based upon such finding, an award was made directing the compensation insurance carrier here, who is one of the named plaintiffs, to make certain payments to the claimant, basing the amount thereof upon the combined earnings of the claimant as a member of the military service and also as an employee of the Air Force Exchange.

In accordance with the provisions of 33 U.S.C. § 921(b), this action was instituted by the present plaintiffs to set aside the order or award mentioned above. The present proceeding takes the form of an action for an injunction to restrain the enforcement of the order and to require the dismissal of the claim made. No question is raised as to this court's jurisdiction or as to the sufficiency of the preliminary steps taken as a basis thereof. This motion for summary judgment followed.

The plaintiffs contend in substance that the claimant is not a "civilian employee" within the meaning of that term as used in 5 U.S.C. § 150k-1(a), above referred to. A second contention is advanced by the plaintiffs to the effect that the Commissioner erred in computing the permanent partial disability rate of compensation to claimant at $70. per week. The conclusion is urged that the resulting order is " * * * not in accordance with law" and contrary to the provisions of Title 33 U.S.C. § 910. The Commissioner relies upon the limited scope of review of this court of the order involved and in effect contends that the statute has been correctly interpreted and applied, both as to coverage of claimant and the computation of the award made.

No controlling judicial precedent is available. The same problem was encountered in Amarillo Air Force Base Exchange v. Leavey, D.C., 232 F.Supp. 963 where it was held, under circumstances similar to those found here, that the claimant was not a "civilian employee" in the performance of the services at a Base Exchange at the time of his injury and the enforcing of the award was permanently enjoined. This decision however is not particularly helpful since stress seems to have been placed upon the fact that the employer paid no premium calculated upon the wages of the claimant and the court, at least in part, concluded that the practical construction by the parties to the compensation contract was a factor in arriving at the final decision. Whether or not this circumstance was of any weight, we have no such situation here. It is conceded that the compensation insurance contract covered this claimant. It follows that the decision must rest upon the language of the statute interpreted in the light of the legal guides afforded by judicial precedent.

We first turn to the statute itself, 5 U.S.C. § 150k-1(a) which, as far as pertinent here, reads as follows:

"The Longshoremen's and Harbor Workers' Compensation Act shall apply with respect to the disability or death resulting from injury, as defined in section 902(2) of Title 33, occurring to a civilian employee of any nonappropriated fund instrumentality described in section 150k of this title, subject to the following provisions of this section:"

It is noted that the statute nowhere defines the term "civilian employee" as used therein. There is no question but that the claimant here is not entitled to the coverage of the Act unless he comes within the class of a "civilian employee" as the term is used in the above statute. There also would appear to be no question but that the word "civilian", in its common understanding and in its dictionary definition, connotes a person not on active duty in one of the armed services. It is well recognized however that remedial legislation must be liberally construed and applied in the light of the intent and purpose of the statute involved.

Paraphrasing the language of Judge Hand in United States v. Klinger, 2 Cir., 199 F.2d 645 at 648, the problem here may be stated as follows: How far is it proper to read the words out of their literal meaning in order to realize their alleged overriding purpose? The legislative history of the statute sheds no revealing light upon the problem. There is no deviation in the use of the term "civilian employees" as the persons for whom disability and death benefits were provided, in either the 1952 statute or as amended in 1958. The legislation appears only to confirm the previously existing status of civilian employees. The activity in which the claimant was engaged was held to be an integral part of government military service in Standard Oil Co. of California v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611. The 1952 statute was passed for the apparent purpose of dispelling any doubt as to the non-coverage of such employees by the Federal Compensation Act. The 1958 amendment had, for one of its purposes, the affording of a forum under the Longshoremen's Act which would compensate all civilian employees in the same manner and thereby avoid either the refusal of coverage or unequal treatment of injured civilian employees under the provisions of the several differing state compensation acts. The 1958 amendment also expressly provided that the remedy was exclusive as to those injured within the

scope of the statute, thus terminating any contentions that the Federal Tort Claims Act afforded a remedy to the injured party. It would seem to be sufficient to cite the decisions in United States v. Forfari, 9 Cir., 268 F.2d 29 and Aubrey v. United States, 103 U.S. App.D.C. 65, 254 F.2d 768 as to the general purpose of the legislation under discussion.

A summary of the case law and legislative history indicates that the legislation was intended to eliminate any doubts as to the extent of the remedy afforded the injured complainant rather than to indicate an extension of the literal meaning of the terms used in defining the class of employees entitled to the benefits thereof.

This court appreciates that the decision of the Commissioner is presumptively correct and that the statute provides that in this proceeding, it shall be presumed that the claim comes within the provisions of the Longshoremen's Act, 33 U.S.C. § 920, but agrees with the statement in Atlantic Stevedore Co. v. O'Keefe, D.C., 220 F.Supp. 881 that there is a distinction between a presumption of coverage and a presumption of jurisdiction. Jurisdiction must necessarily rest upon statutory language while some measure of elasticity is afforded the trier of the fact in determining the time, place and circumstances of the accident involved. Likewise this court is mindful of the broad language of the decisions in O'Keefe v. Smith Associates, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 and Michigan Mut. Liability Co. v. Arrien, 2 Cir., 344 F.2d 640 but both decisions involved the circumstances, time or place of the accident rather than the jurisdiction of the Commissioner to entertain the claim. Even if we apply the test of rationality referred to in the above decisions, we find no rationale or process of reasoning by the Commissioner in his decision which would read out of the statute the word "civilian" as applied to the employees protected thereby. It is difficult for this court to conclude that Congress, in limiting the class of em-

ployees covered by the statute by the use of the words "civilian employee", intended that the limitation had no meaning whatever in the application thereof. Administrative or judicial construction may not revise a statute to accommodate the writer's concept as to what the law should be.

■ The plaintiffs support their contention by reference to Army and Air Force regulations and certain statutes which they urge are indicative that Congress has kept separate the disability benefits afforded military and civilian employees engaged in a nonappropriated fund activity. In Air Force regulation No. 176–5, apparently in effect March 6, 1957, a civilian employee is defined as follows—"A civilian employed by an installation or activity of the Army or of the Air Force who is paid from an appropriated or nonappropriated funds". It is not to be presumed that Congress, in enacting the 1958 statute, was unaware of the above definition. The following quotation, taken from Kent Mfg. Corp. v. Commissioner, 4 Cir., 288 F.2d 812 at 815, would seem to have some relevance—"An earlier specific definition may properly color a subsequent use of the same words without redefinition". It appears to be conceded, and confirmed by the proceeding which resulted in claimant's retirement from military service, that a complete plan or scheme is provided by statute and regulation whereby this claimant is afforded disability benefits for the injury incurred. This plan is independent of the statutes here involved. The benefits include medical care, hospitalization, full pay during the period of disability and a percentage allowance for the permanent partial disability found to exist. These benefits overlap and to some extent exceed those which may be awarded under the statutes involved here. The above benefits are available to military personnel although incurred in the performance of a non-military duty or employment unless incurred as the result of claimant's own misconduct or during a period when he was absent without leave from his military station. It follows that the literal application of the provisions of 150k-1 of the statute results in no inequity as between civilian employees and members of the military performing the same type of service.

Plaintiffs urge that the application of the statute, as made by the Commissioner, would endanger claimant's disability and retirement award, referred to above. The argument is based upon the provisions of 5 U.S.C. 150k–1(c) which provides that the remedy under that section is exclusive as to the United States. Steelman v. United States, Ct.Cl., 318 F.2d 733. Although briefed by the litigants, the resolution of this contention is unnecessary to this decision.

■ The guides to statutory construction are so well known that "It is idle to add to the acres of paper and streams of ink that have been devoted to the discussion". United States v. Klinger, supra, 199 F.2d at page 648. This court holds that the order of the Commissioner here is " * * * not in accordance with law" in that the language of the statute was in effect amended by the failure of the Commissioner to give any meaning to the word "civilian" as found therein. The above construction and application of the statute are contrary to both the language and intent thereof. "Freedom to construe is not freedom to amend". Sexauer & Lemke v. Luke A. Burke & Sons Co., 228 N.Y. 341 at 345, 127 N.E. 329 at 331.

It follows from the above that defendants' motion for summary judgment is denied. Although no formal cross motion for summary judgment has been made by the plaintiffs, the weight of authority would indicate that such relief is proper under the circumstances here. Moore's Federal Practice, Second Ed., Vol. 6, pg. 2088 etc. Judgment will therefore be granted, setting aside the award made by the Commissioner filed on February 15, 1965 and enjoining the enforcement thereof, and it is

So ordered.