## V.

DIRECTOR, OFFICE OF VORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMEN OF LABOR, Petitioner,

v.

NATIONAL VAN LINES, INC Transport Indemnity Company, Eurea Van & Storage Company, Marylad Casualty Company, and James A. Riy, III, Respondents.

James A. RILEY, III, Pitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGIMS, UNITED STATES DEPARTMNT OF LABOR, et al., Respondents,

Nos. 78–1259, 78-68.

United States Court Appeals, District of Columbi Circuit.

Argued June 1, 79.

Decided Nov. 1 979.

As Amended Dec., 1979.

Rehearing Denied D 19, 1979.

Joshua T. Gillelan, II, Atty., Dept. of Labor, Washington, D.C., with whom Carin Ann Clauss, Sol. of Labor, and Laurie M. Streeter, Associate Sol., Washington, D.C., were on the brief, for petitioner Director, Office of Workers' Compensation Programs.

Walter W. Pitsenberger, Bowie, Md., for petitioner James A. Riley, III.

Jean S. Moore, Washington, D.C., with whom Vincent H. Cohen and Alphonso A. Christian, II, Washington, D.C., were on the brief, for respondent Maryland Cas. Co.

Leo A. Roth, Jr., Washington, D.C., for respondents National Van Lines, Inc. and Transport Indem. Co.

Before WRIGHT, Chief Judge, BAZELON, Senior Circuit Judge, and TAMM, Circuit Judge.

Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.

Dissenting opinion filed by TAMM, Circuit Judge.

J. SKELLY WRIGHT, Chief Judge:

These cases arise on petitions for review of an order of the Benefits Review Board (Board).[1] The Board upheld a claim by petitioner James A. Riley, III (Riley) for payments under the District of Columbia Workmen's Compensation Law,[2] in addition to those he had already received under the Virginia statute.[3] Riley's employer, Eureka Van & Storage Company (Eureka), now defunct, and James A. Riley, Sr. (Riley, Sr.), the president and sole shareholder of Eureka and claimant Riley's father, were held liable for the payments. To the extent that Eureka and Riley, Sr. could not satisfy the judgment, the claim would be paid from a special fund created by statute.[4] The Board held that Eureka's insurance carrier, Maryland Casualty Company, was not liable

---

1. Under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1976), workmen's compensation claims are adjudicated in the first instance before Administrative Law Judges (ALJ). Id. § 919(d). Cases that raise substantial questions of law or fact may be heard by an administrative appeals board, called the Benefits Review Board (Board). Id. § 921(b)(1) & (3). The three-member Board is a "quasi-judicial" independent body, appointed by the Secretary of Labor, id. § 921(b)(1); 20 C.F.R. §§ 801.101–103, 801.201 (1978). Petitions for review of Board orders are heard by the United States Court of Appeals, 33 U.S.C. § 921(c) (1976), see note 20 infra. Prior to the 1972 amendments claims under the LHWCA were heard in the first instance by deputy commissioners; judicial review was by writ of injunction in the District Courts, 33 U.S.C. § 921 (1970) (amended 1972), with a right of appeal to the appellate courts, 28 U.S.C. §§ 1291–1292 (1970). See generally In re District of Columbia Workmen's Compensation Act, 180 U.S. App.D.C. 216, 219–220, 554 F.2d 1075, 1078–1079, cert. denied, sub nom. J. Frank Kelly, Inc. v. Swinton, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976).

2. The District of Columbia Code makes applicable to the District of Columbia the provisions of the LHWCA:

> The provisions of chapter 18 of title 33, U.S.Code, including all amendments that may hereafter be made thereto, shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs; except that in applying such provisions the term "employer" shall be held to mean every person carrying on any employment in the District of Columbia, and the term "employee" shall be held to mean every employee of any such person.

36 D.C.Code § 501 (1973). Certain exceptions, not pertinent here, are listed in 36 D.C.Code § 502 (1973).

3. Va.Code Ann. §§ 65.1–1 to 65.1–152 (1973 Repl. Vol. & 1978 Supp.).

4. The special fund was established pursuant to 33 U.S.C. §§ 944–945 (1976); see also id. § 918(b).

because its policy covered only claims made by Eureka employees under Virginia law. The Board also held that National Van Lines, Inc. and its insurer, Transport Indemnity Company, were not liable to Riley because National Van Lines could not be considered a general contractor for purposes of the contractor liability provisions of the District of Columbia Act. *Riley v. Eureka Van & Storage Co.*, BRB Nos. 76–259, 259A, 259B, 7 B.R.B.S. 445 (Jan. 23, 1978).[5]

Petitioner Riley urges this court to reverse the decision of the Board with regard to the liability of Maryland Casualty Company, National Van Lines, and Transport Indemnity Company. He is joined in his petition by the Director of the Office of Workers' Compensation Programs (OWCP) for the United States Department of Labor,[6] who challenges only the portion of the order pertaining to National Van Lines and its insurer.

## I. BACKGROUND

Claimant Riley was severely injured in a highway accident on January 7, 1966 in New York State. He is permanently totally disabled, as a quadriplegic. The accident occurred during the regular course of Riley's employment as a driver for Eureka Van & Storage Company, which was serving as an agent for National Van Lines in the haulage of goods in interstate commerce. On the fateful trip Riley was driving a truck marked with the colors and insignia of National Van Lines, under the direction of a dispatcher for National Van Lines. He had picked up goods in the District of Columbia, Virginia, and Maryland to be delivered in New York, Connecticut, and New Jersey. The goods originating in the District of Columbia had been delivered in New York City on the day before the accident.[7]

While Riley was hospitalized Riley, Sr. filed an "Employer's First Report of Accident" with the Industrial Commission of the State of Virginia on February 22, 1966. No report was made to the District of Columbia district office of the Department of Labor's Bureau of Employees' Compensation (now OWCP) with respect to Riley's accident or claim until 1972.[8] On March 8, 1966 Riley, Sr., on behalf of his son, executed an agreement with Eureka's insurer, Maryland Casualty, for benefits to be paid to claimant Riley at a rate of $39.00 per week for 400 weeks ($15,600 total), plus all hospital and medical bills for two years following the accident. The Virginia Industrial Commission approved the settlement, which was the maximum award permitted under state law. Notice of Award of the Virginia Industrial Commission, March 30, 1966.[9]

On May 2, 1972 Riley filed a claim with the District of Columbia district office for additional benefits from Eureka and Maryland Casualty under the District of Columbia statute.[10] No written claim was filed against National Van Lines and Transport Indemnity, but they were involved in all stages of the proceeding.[11]

---

5. Reprinted in Joint Appendix (JA) at 50.

6. The Director of the Office of Workers' Compensation Programs has standing as a petitioner in this proceeding both because of his official responsibility for administration of the LHWCA and because of his financial interest as administrator of the special fund. *See Director, Office of Workers' Comp. Programs v. Boughman*, 178 U.S.App.D.C. 132, 545 F.2d 210 (1976); *McCord v. Cephas*, 174 U.S.App.D.C. 302, 532 F.2d 1377 (1976); *see also Director, Office of Workers' Comp. Programs v. Eastern Coal Corp.*, 561 F.2d 632, 641–649 (6th Cir. 1977).

7. The facts are set forth fully in the first decision and order of the ALJ filed July 23, 1974, JA 6–14. They are essentially undisputed.

8. In May 1966 Riley, Sr. filed a claim on his son's behalf in New York. The claim was dismissed without prejudice for failure to prosecute on August 9, 1966. JA 12.

9. JA 11–12.

10. JA 13.

11. Brief for respondent Maryland Casualty Company at 8–9, adopted in brief for respondent National Van Lines at 4.

The Administrative Law Judge (ALJ) assigned to the claim dismissed it on two grounds: (1) that the District of Columbia lacked jurisdiction of the claim because of the absence of a substantial and legitimate interest in claimant's employment or accident, and (2) that the claim was barred by the statute of limitations.[12] The Benefits Review Board, in a split decision, reversed on both grounds and remanded.[13] On remand the ALJ reluctantly [14] found Eureka and its president, Riley, Sr.,[15] liable for payments under the District of Columbia law. He further held that Maryland Casualty had fully satisfied its obligations, which were limited to paying claims arising under Virginia law. Finally, he concluded that Eureka was a subcontractor for National Van Lines, and thus that National and its insurer, Transport Indemnity, were jointly and severally liable to the claimant.[16]

On appeal the Benefits Review Board affirmed the ALJ's decision holding Eureka and Riley, Sr. liable for additional payments and Maryland Casualty not liable. The Board reversed on the issue of the liability of National Van Lines and Transport Indemnity and held that, in the event that Eureka and Riley, Sr. were unable to provide the payments, Riley would be compensated from a special fund set up under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA).[17]

Claimant Riley and his father have at all relevant times been residents of Virginia.[18] Eureka was a small moving and storage company headquartered in Fairfax County, Virginia and serving the metropolitan Washington, D. C. area. Eureka was covered for workmen's compensation claims by Maryland Casualty Company. The policy expressly limited coverage to claims arising under the law of Virginia. In addition to its Washington area business, Eureka served as an agent for National Van Lines. Pursuant to an "Agency Agreement" with National, Eureka operated trucks in interstate commerce under the Interstate Commerce Commission (ICC) license number of National, displaying the colors and emblems of National. National remained responsible to interstate shippers for carriage under the agreement. Shippers paid National Van Lines directly. National in turn gave instructions to Eureka drivers, exercised some control over the hiring and training of Eureka drivers involved in National Van Lines haulage, and paid Eureka directly for its services. A clause of the agreement required that Eureka furnish workmen's compensation insurance for the Eureka employees.[19]

■ Before reaching the merits of the liability of Maryland Casualty, National Van Lines, and Transport Indemnity, it is necessary to resolve a question of the jurisdiction of the District of Columbia over this claim.[20]

---

12. JA 5–22.

13. JA 23–31. This decision of the Board was appealed to the United States Court of Appeals for the Second Circuit. The appeal was dismissed because the Board decision was not a final order. JA 37.

14. A large part of the ALJ's opinion on remand elaborated on his disagreement with the Board over the issues of the jurisdiction of the District of Columbia and the statute of limitations. JA 39–43. This part of the opinion was vacated by the Board on appeal. JA 56.

15. Riley, Sr.'s liability, not at issue here, is based on 33 U.S.C. § 938(a) (1976).

16. JA 43–48.

17. JA 50–59. See 33 U.S.C. §§ 918(b), 944–945 (1976).

18. JA 103, 180.

19. JA 6–10.

20. The dissent questions the jurisdiction of this court. Our jurisdiction is pursuant to 33 U.S.C. § 921(c) (1976):

Any person adversely affected or aggrieved by a final order of the [Benefits Review] Board may obtain a review of that order in the United States court of appeals for the circuit *in which the injury occurred*, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. * * *

(Emphasis added.) This provision is made applicable to the District of Columbia by 36 D.C. Code § 501 (1973). Relying on the words "in which the injury occurred," the dissent claims

## II. JURISDICTIONAL ISSUES

### A

█ The District of Columbia Workmen's Compensation Act, 36 D.C.Code § 501 (1973), is of widest permissible extraterritorial application. It incorporates the substantive and procedural features of the LHWCA, 33 U.S.C. §§ 901–950 (1976), in cases of injury or death of "an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs." The reach of the statute has been limited in accordance with the dictates of the full faith and credit clause of the United States Constitution, U.S.Const., Art. IV, § 1, to cases where there is "some substantial connection between the District and the particular employee-employer relationship * *." *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 476, 67 S.Ct. 801, 806, 91 L.Ed. 1028 (1947). So long as such a "substantial connection" exists, the District of Columbia Act applies and satisfies constitutional strictures. *Id.* The principal jurisdictional issue in this case is whether such a "substantial connection" between Riley's employment relation and the District of Columbia exists.

On the facts, the issue is close. Many of the common indicia of substantial connection,[21] for example, residence of the employee, headquarters of the employer, place of making the employment contract, are absent. For two reasons, however, the usual indicia are of little relevance to this case. First, Riley's residence and Eureka's headquarters were located in a metropolitan area encompassing the District of Columbia and parts of Virginia and Maryland. For most practical purposes, it makes little difference to the parties or to the jurisdictions, in the context of the policies behind the Act, precisely where the home or headquarters is. The most significant geographical division is the metropolitan Washington area. Second, the interstate nature of Eureka's business makes it difficult to pin the employment relation to a specific place. Even Eureka's "local" haulage involved three jurisdictions; under the banner of National Van Lines, Eureka's drivers penetrated many of the states of the Union. Riley, for example, suffered his injury in New York, while under the direction of a National Van Lines dispatcher in Illinois. Given these two factors, the proper territorial jurisdiction over the case is anything but obvious.

that this appeal should be heard in the Second Circuit rather than this one.

Sensible as this construction of the *Longshoremen's Act* may be, it makes little sense as a construction of the *District of Columbia Workmen's Compensation Act.* It would inevitably lead to inconsistent interpretations of what is essentially parallel to a state workmen's compensation statute. Moreover, the argument of the dissent runs counter to the long and unbroken practice of this court. *E.g., Director, Office of Workers' Comp. Programs v. Boughman, supra* note 6, 178 U.S.App.D.C. at 132, 545 F.2d at 210; *Amalgamated Ass'n of Street, etc. Employees v. Adler*, 119 U.S.App. D.C. 274, 340 F.2d 799 (1964); *U. S. Fidelity & Guaranty Co. v. Donovan*, 94 U.S.App.D.C. 377, 221 F.2d 515 (1954); *Jonathan Woodner Co. v. Mather*, 93 U.S.App.D.C. 234, 210 F.2d 868, *cert. denied*, 348 U.S. 824, 75 S.Ct. 39, 99 L.Ed. 656 (1954); *see* additional cases cited in note 34 *infra.* Indeed, one case involving a District of Columbia employee who was injured in Virginia and died as a result, which was reviewed by the United States District Court for the District of Columbia and

then in this court, was heard by the Supreme Court with never a doubt about proper appellate jurisdiction. *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947). At all times the statute provided for review in the federal court located where the injury or death occurred. *See, e.g.*, Pub.L. No.69–803 § 21(b), 44 Stat. 1436 (1927). Consistent with the above authorities, we hold that, for purposes of appellate jurisdiction, injuries giving rise to claims under 36 D.C.Code § 501 "occur" within the territorial jurisdiction of the United States Court of Appeals for the District of Columbia Circuit. *See also Overseas African Constr. Corp. v. McMullen*, 500 F.2d 1291 (2d Cir. 1974). *But see Home Indemnity Co. v. Stillwell*, 597 F.2d 87, 90 (6th Cir. 1979) (dictum); *Pettus v. American Airlines, Inc.*, 587 F.2d 627 (4th Cir. 1978), *cert. denied*, —— U.S. ——, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979); *Haughton Elevator Co. v. Lewis*, 572 F.2d 447, 448 n.* (4th Cir. 1978).

21. *See* 4 A. Larson, The Law of Workmen's Compensation § 86.10 at 16–33 (1979).

■ In making our judgment on this petition our discretion to evaluate the jurisdictional facts is doubly limited. First, in our function as a reviewing court we may reverse the decision of the Board only if that decision is unsupported by substantial evidence or inconsistent with applicable law. *Cardillo v. Liberty Mutual Ins. Co., supra,* 330 U.S. at 474, 67 S.Ct. 801; *Marcus v. Director, Office of Workers' Comp. Programs,* 179 U.S.App.D.C. 89, 94–95, 548 F.2d 1044, 1049–1050 (1976).[22]

■ Second, we are bound by the congressionally-mandated "presumption of jurisdiction."[23] The LHWCA provides:

In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

(a) That the claim comes within the provisions of this chapter.

33 U.S.C. § 920(a) (1976). As the Supreme Court has observed, this presumption of jurisdiction "applies with equal force to proceedings under the District of Columbia Act." *Cardillo v. Liberty Mutual Ins. Co., supra,* 330 U.S. at 474, 67 S.Ct. at 805. Moreover, the workmen's compensation statute at issue, being designed to alleviate the suffering of injured workers by spreading the cost of their injuries among the purchasers of their products, must be interpreted liberally in favor of injured claimants. *Evening Star Newspaper Co. v. Kemp,* 175 U.S.App.D.C. 89, 92, 533 F.2d 1224, 1227 (1976).[24]

---

22. *See also O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.,* 380 U.S. 359, 362, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483 (1951); *Evening Star Newspaper Co. v. Kemp,* 175 U.S.App.D.C. 89, 91–92, 533 F.2d 1224, 1226–1227 (1976); *Associated Indemnity Corp. v. Shea,* 455 F.2d 913, 914 (5th Cir. 1972) (*per curiam*); *Gudmundson v. Cardillo,* 75 U.S.App.D.C. 230, 126 F.2d 521 (1942). The legislative history of the LHWCA Amendments of 1972, Pub.L.No.92–576, 86 Stat. 1251 (1972), indicates that judicial review is limited to the "substantial evidence" test. H.R.Rep.No.92–1441, 92d Cong., 2d Sess. 12 (1972).

The Second Circuit, in *Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35, 48–50 (2d Cir. 1976), *aff'd sub nom. Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), suggested that decisions of the Benefits Review Board on the coverage of the LHWCA are not entitled to much deference from the courts. *Accord, Stockman v. John T. Clark & Son of Boston, Inc.,* 539 F.2d 264, 269–270 (1st Cir. 1976), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1092 (1977). At least in cases regarding the reach of the D.C. Act, we cannot agree. It would be a poor use of judicial resources for this court to decide for itself whether in each occurring permutation of jurisdictional facts the case is sufficiently related to the District of Columbia to fall within the Act. This we leave to the Board, which is more familiar with the range of factual situations. We will not upset the Board's determinations lightly.

The Director of the Office of Workers' Compensation Programs has not challenged the Board's conclusion that the D.C. Act applies to this case. Had he done so, our reviewing function might be different. *See* 198 U.S.App.D.C. at ——, 613 F.2d at 985–986 *infra.*

23. *Jacksonville Shipyards, Inc. v. Perdue,* 539 F.2d 533, 541 (5th Cir. 1976), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977); *Overseas African Constr. Corp. v. McMullen, supra* note 20, 500 F.2d at 1294. *Contra, Employers Mutual Liability Ins. Co. of Wis. v. Arrien,* 244 F.Supp. 110, 113 (N.D.N.Y.1965).

The Second Circuit, in *Pittston Stevedoring Corp. v. Dellaventura, supra* note 22, 544 F.2d at 48, commented that the " 'presumption' of coverage" is "not * * * particularly helpful" in determining where the line should be drawn between employment covered by the LHWCA and employment not so covered. *Accord, Stockman v. John T. Clark & Son of Boston, Inc., supra* note 22, 539 F.2d at 269. The court recognized, however, that once the line has been drawn, the presumption "come[s] into play in ruling on cases near the border." 544 F.2d at 48. In the present case the line has long been drawn at the point where the District of Columbia's interest in the employment relation or the accident is "substantial"; the presumption is therefore "helpful" to us in deciding this case, which admittedly falls "near the border."

24. *Accord, Northeast Marine Terminal Co. v. Caputo, supra* note 22, 432 U.S. at 268, 97 S.Ct. 2348; *Alabama Dry Dock & Shipbuilding Co. v. Kininess,* 554 F.2d 176, 177 (5th Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1977); *Tampa Ship Repair & Dry Dock Co. v. Director, Office of Workers' Comp. Programs,* 535 F.2d 936, 938 (5th Cir. 1976) (*per curiam*).

In view of these two limitations, it is not surprising that no case has been brought to our attention, nor has one been found, in which this court has *reversed* the Board (or the deputy commissioner under the pre-1972 system) in favor of a *more restrictive* view of the extraterritorial reach of the statute. Of course, should the Board seek to extend its jurisdiction to cases involving employment relations without significant connection to the District of Columbia, we shall not hesitate to reverse. This is not such a case.

■■■■ Eureka's principal service area was the metropolitan Washington, D. C. area, including northern Virginia, the Maryland suburbs, and the District.[25] Although the headquarters of the company were located in Virginia, there is no dispute over the fact that it served many customers in the District and regularly sent its employees into the District in connection with the business.[26] Riley himself went into the District on Eureka business on an average of once or twice a week for five years.[27] The centering of Eureka's business in the Washington, D. C. area is especially important, for the customers of the employer ultimately bear the cost of compensation payments. Since Eureka principally serviced Washington and its environs, many District residents could be affected by the outcome of this controversy.[28]

The interests of a jurisdiction in workmen's compensation cases are primarily that those employees who work within its boundaries be adequately protected and that those employers who operate extensively within its boundaries be fairly limited in their liability. On this score the District of Columbia has as strong an interest, perhaps stronger, as Virginia or any other state.

■■■■ It is important to bear in mind that in workmen's compensation cases, unlike many controversies over choice of law, it is not necessary to identify one jurisdiction with predominant contacts or interests. The test of jurisdiction is not whether the proposed forum has interests greater than those of some other forum, but rather whether the proposed forum's interest is "legitimate and substantial in itself." 4 A. Larson, The Law of Workmen's Compensation § 86.35 at 16–43 (1979).[29] So long as a set-off of previous awards in other jurisdictions is made,[30] thereby avoiding duplicative recovery, a state or district with substantial contacts to an employment relation may apply its compensation laws without regard to whether another jurisdiction has or could have asserted jurisdiction.[31]

25. The "place where the industry is localized" is a well recognized contact that supports assertion of jurisdiction over workmen's compensation claims. 4 A. Larson, *supra* note 21, § 86.10 at 16–33. "[T]he place where the industry is localized has a special interest, in that the burdens and costs of compensation fall most directly upon employers and consumers in the area where the industry is centered." *Id.* § 86.34 at 16–42.

26. There is testimony in the record by Riley, Sr. that Eureka maintained a telephone answering service in the District. JA 210. The ALJ rejected the evidence as unreliable. JA 39–40. It does not matter whether or not Eureka maintained such a service; it suffices to note that Eureka had customers in the District and its business was centered there.

27. JA 10.

28. In this case Eureka is defunct and will therefore be unable to pass on any costs of workmen's compensation to customers. The contacts with the jurisdiction, however, are evaluated for jurisdictional purposes as of the time of the injury.

29. This principle was firmly established in *Industrial Comm'n v. McCartin*, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947). *See* Restatement (Second) of Conflict of Laws § 182 (1971): "Relief may be awarded under the workmen's compensation statute of a State of the United States, although the statute of a sister State also is applicable."

30. *See* 4 A. Larson, *supra* note 21, § 85.70 at 16–30 to 16–32.

31. In view of *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), an opinion whose authority has been eroded but which has not been overruled, *see Industrial Comm'n v. McCartin, supra* note 29, 330 U.S. at 622, 67 S.Ct. 886, a problem under U.S. Const. Art. IV, § 1 and 28 U.S.C. § 1738 (1976) is raised: Does the decision of the Board deny full faith and credit to the prior decision of the

Here the contacts between the District of Columbia and the Eureka-Riley employment relation are substantial enough that this court, faced with the presumption of jurisdiction and with a determination by the Board that the injury is covered by the District of Columbia Act, must conclude that the District of Columbia Act applies.

This case presents a stronger case for application of District of Columbia law than that presented by *Director, Office of Workers' Comp. Programs v. Boughman*, 178 U.S. App.D.C. 132, 545 F.2d 210 (1976). In *Boughman* we adopted the reasoning of the Benefits Review Board finding the compensation claim covered by the District of Columbia compensation statute. *Id.*, 178 U.S. App.D.C. at 133, 545 F.2d at 211. Claimant was a representative of a national labor union, murdered while meeting at a union hall in California with a representative of the local.[32] The Board assumed jurisdiction even though the claimant resided in California, was killed in California, and was directed in his work by a regional officer in the western United States. The contacts with the District of Columbia included the employer's national headquarters, the origin of the claimant's paychecks and travel reimbursements, the administration of claimant's pension fund, and (by inference) the place of the making of the employment contract. Claimant also traveled occasionally to the District on business.[33] Since

---

Virginia Industrial Commission? In *Pettus v. American Airlines, Inc., supra* note 20, 587 F.2d at 627, the Fourth Circuit faced this question on similar facts. In *Pettus* an employee hired in the District of Columbia by an airline company carrying on employment in the District of Columbia was injured while working in Virginia. He received an award under the Virginia compensation statute, Va.Code Ann. §§ 65.1–1 to 65.1–152 (1973 Repl. Vol. & 1978 Supp.). He subsequently was awarded benefits by the Benefits Review Board under the District of Columbia compensation statute, 36 D.C.Code §§ 501–502 (1973). On review before the Fourth Circuit, *see* note 20 *supra*, the court held that the Virginia statute is "exclusive of a second proceeding," 587 F.2d at 631, and thus that the Board's award to Pettus was prohibited by the full faith and credit clause of the Constitution.

We cannot agree. Instead, we adopt the reasoning of another panel of the Fourth Circuit in *Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Comp. Programs*, 583 F.2d 1273 (4th Cir. 1978), *cert. denied*, 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979). That panel held that the Virginia statute does not preclude recovery under the District of Columbia Act. 583 F.2d at 1277–1278. The Supreme Court has made clear in *Industrial Comm'n v. McCartin, supra* note 29, 330 U.S. at 628, 67 S.Ct. at 889, that "[o]nly some unmistakable language by a state legislature or judiciary" would warrant the conclusion that a state workmen's compensation statute is intended "to cut off an employee's right to sue under other legislation passed for his benefit." The Virginia statute provides, "The rights and remedies herein granted to an employee * * shall exclude all other rights and remedies of such employee * * * at common law or otherwise * * *." Va.Code Ann. § 65.1–40 (1973 Repl. Vol.). This language has been in-terpreted to preclude other Virginia common law and statutory remedies, *see Eighteenth Annual Survey of Developments in Virginia Law: 1972–1973*, 59 Va.L.Rev. 1400, 1632 (1973). We do not interpret it as precluding remedies to which workers are entitled under the laws of other jurisdictions. *See* 4 A. Larson, *supra* note 21, §§ 85.30, 85.40 at 16–19 to 16–26.

Nor is the Board prevented from awarding additional benefits by the principles of *res judicata* or collateral estoppel. Since the Virginia statute does not preclude an additional award under the District of Columbia law, the Virginia proceeding cannot determine the amount of recovery under the District of Columbia provisions. Whatever effect the factual determinations and inferences of the Virginia Industrial Commission may have in the subsequent District of Columbia proceeding, there is no doubt that the Board may reach its own independent decision on the size of the award. *See, e.g., Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Comp. Programs, supra; Director, Office of Workers' Comp. Programs v. Boughman, supra* note 6, 178 U.S. App.D.C. at 132, 545 F.2d at 210; *Peter v. Arrien*, 325 F.Supp. 1361, 1366 (E.D.Pa.1971), *aff'd*, 463 F.2d 252 (3d Cir. 1972) (*per curiam*). In each of these cases the courts affirmed the LHWCA awards even though the claims had previously been adjudicated by state workmen's compensation commissions. *But see Pettus v. American Airlines, Inc., supra* note 20, 587 F.2d at 628–629.

**32.** The facts of *Boughman* are set out in the Board's opinion, *Ekar v. International Union of Operating Engineers*, BRB Nos. 74–209, 209A, 1 B.R.B.S. 406 (April 11, 1975).

**33.** *Id.*

jurisdiction was upheld in *Boughman*, we must certainly uphold it here.[34]

### B

Claimant Riley filed his claim in the District of Columbia on May 2, 1972, some six years after his accident occurred.[35] The ALJ ruled that his claim was barred by the statute of limitations and also by laches.[36] This conclusion was reversed by the Board.[37] The Board's decision is challenged by respondents Maryland Casualty, National Van Lines, and Transport Indemnity.

Under the LHWCA an injured worker must file a claim for compensation within one year after his injury or be barred, subject to certain tolling provisions. 33 U.S.C. § 913 (1976).[38] This limitation is mandatory and jurisdictional in nature. *Sun Shipbuilding & Dry Dock Co. v. Bow-*

*man*, 507 F.2d 146, 148 n.3 (3d Cir. 1975); *Young v. Hoage*, 67 App.D.C. 150, 152, 90 F.2d 395, 397 (1937); *see also Pillsbury v. United Engineering Co.*, 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225 (1952). The parties agree that Riley failed to file his claim in the District until after the one-year period had expired.

But 33 U.S.C. § 930(f) (1976) tolls the statute of limitations during the period that the employer fails to report the injury to the Secretary of Labor.[39] In effect, the statute of limitations does not begin to run on an injured employee's claim under the District of Columbia Act until after the employer has reported the injury to the Secretary. *United Brands Co. v. Melson*, 594 F.2d 1068, 1070–1073 (5th Cir. 1979); *Associated Indemnity Corp. v. Shea*, 455

---

**34.** Other cases in which this court has applied the extraterritorial provision of the District of Columbia Act to award compensation in cases where death or injury occurred outside the District include *U.S. Fidelity & Guaranty Co. v. Donovan, supra* note 20, 94 U.S.App.D.C. 377, 221 F.2d 515; *Travelers Ins. Co. v. Cardillo*, 78 U.S.App.D.C. 392, 141 F.2d 362 (1944); *Travelers Ins. Co. v. Cardillo*, 78 U.S.App.D.C. 394, 141 F.2d 364 (1944); *B. F. Goodrich Co. v. Britton*, 78 U.S.App.D.C. 221, 139 F.2d 362 (1943). *But cf. Gasch v. Britton*, 92 U.S.App. D.C. 64, 202 F.2d 356 (1953) (upholding deputy commissioner's decision that Maryland injury to Maryland resident was not covered by the District of Columbia Act, although the employment contract was made in the District of Columbia).

**35.** JA 13.

**36.** JA 19–22, 42–43.

**37.** JA 30–31, 56.

**38.** 33 U.S.C. § 913(a) (1976) provides:

Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefor[ ] is filed within one year after the injury or death. If payment of compensation has been made without an award on account of such injury or death, a claim may be filed within one year after the date of the last payment. Such claim shall be filed with the deputy commissioner in the compensation district in which such injury or death occurred. The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of

reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

**39.** 33 U.S.C. § 930 (1976) provides in relevant part:

(a) Within ten days from the date of any injury or death or from the date that the employer has knowledge of a disease or infection in respect of such injury, the employer shall send to the Secretary a report setting forth (1) the name, address, and business of the employer; (2) the name, address, and occupation of the employee; (3) the cause and nature of the injury or death; (4) the year, month, day, and hour when and the particular locality where the injury or death occurred; and (5) such other information as the Secretary may require. A copy of such report shall be sent at the same time to the deputy commissioner in the compensation district in which the injury occurred.

\* \* \* \* \* \*

(f) Where the employer or the carrier has been given notice, or the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier has knowledge, of any injury or death of an employee and fails, neglects, or refuses to file report thereof as required by the provisions of subdivision (a) of this section, the limitations in subdivision (a) of section 913 of this title shall not begin to run against the claim of the injured employee or his dependents entitled to compensation, or in favor of either the employer or the carrier, until such report shall have been furnished as required by the provisions of subdivision (a) of this section.

F.2d 913, 915 (5th Cir. 1972) (*per curiam*). Although Eureka reported Riley's accident to the Virginia Industrial Commission, the company has never made the report to the Secretary and to the compensation district as required by the LHWCA. By the clear import of the statute, the limitations period is tolled.

The respondents, employers and their insurers, however, urge this court to adopt a construction of the tolling provision of Section 930(f) more in line with its "purpose" to encourage reporting of work-related accidents to the proper authorities. They contend that Eureka's report to the Virginia commission fulfills this purpose. We cannot adopt a reading of the statute that would enable respondents to escape the responsibility placed upon them by the clear words of the statute. Such a reading would not be consistent with the overriding purpose of the LHWCA, which is to provide adequate compensation to injured workers. *See Blackwell Constr. Co. v. Garrell*, 352 F.Supp. 192, 196–197 (D.D.C.1972).

 Nor can we agree that Riley is barred from pursuing his claim by the doctrine of laches. Even were we to rule that the congressional decision to toll the statute of limitations in cases such as this may be overridden by the exercise of our equity power, this would be a highly inappropriate case for such action. *See Peter v. Arrien*, 325 F.Supp. 1361, 1366 (E.D.Pa.1971), *aff'd*, 463 F.2d 252 (3d Cir. 1972). After the accident Riley was in no position to investigate his rights under District of Columbia law;

he merely accepted the lesser payments that his father arranged for him under Virginia law. He was not informed of his rights to additional compensation under the District of Columbia law until he consulted a new attorney in March 1972.[40] He filed the District of Columbia claim less than two months later. We recognize the hardship to Riley, Sr. and to National Van Lines caused by the intervening demise of Eureka; however, we cannot exercise the equitable powers of the court so as to deny Riley the much-needed benefits to which he is entitled under the law.[41]

## III. LIABILITY OF MARYLAND CASUALTY

 The parties have stipulated that the workmen's compensation insurance policy issued by Maryland Casualty to Eureka stated that it was limited to compensation claims arising under Virginia law.[42] The ALJ therefore decided that Eureka was an uninsured employer under the District of Columbia Act. Since Maryland Casualty had fully satisfied its obligations to Eureka and to Riley under its insurance contract with Eureka, he held that Maryland Casualty is not liable to Riley for any additional payments under District of Columbia law.[43] This holding was affirmed by the Board.[44]

Petitioner Riley challenges the Board order absolving Maryland Casualty of liability under the District of Columbia Act. He argues that by operation of 33 U.S.C. § 935 (1976)[45] the Maryland Casualty policy may

---

40. *See* JA 13.

41. Respondent Maryland Casualty Company has also argued that Riley should be estopped from asserting the tolling provisions of § 930(f) because his father, as president of Eureka, had a conflict of interest in the case. Brief for respondent Maryland Casualty at 35. In this argument Maryland Casualty echoes the ALJ's opinion on remand, JA 43. Without pausing to consider whether Riley, Sr.'s conduct satisfied all the elements necessary to an invocation of estoppel, we conclude that it would be inequitable to visit the consequences of the father's conflict of interest upon his disabled son.

42. Stipulation No. 7, JA 263.

43. JA 43–44.

44. JA 56–57.

45. 33 U.S.C. § 935 (1976) provides:
 In any case where the employer is not a self-insurer, in order that the liability for compensation imposed by this chapter may be most effectively discharged by the employer, and in order that the administration of this chapter in respect of such liability may be facilitated, the Secretary shall by regulation provide for the discharge, by the carrier for such employer, of such obligations and duties of the employer in respect to such liability, imposed by this chapter upon the employer, as it considers proper in order to effectuate the provisions of this chapter. For such purposes (1) notice to or knowledge of an employer of the occurrence of the injury

be construed as covering all workmen's compensation liability of Eureka, under the law of any jurisdiction. In this argument he is mistaken. Section 935, by its terms, applies only in cases "where the employer is not a self-insurer * * *."[46] In this case Eureka knowingly neglected to procure insurance against liability under the laws of jurisdictions other than Virginia.[47] No law operates to give Eureka greater coverage than it was willing to pay for. With respect to District of Columbia liability, Eureka was a self-insurer. *See Rex Investigative & Patrol Agency, Inc. v. Collura*, 329 F.Supp. 696, 699–700 (E.D.N.Y.1971); *Smith v. Continental Nat'l American Group*, 321 F.Supp. 1354, 1355 (E.D.La.1971).

We find no reason to reverse the Board with regard to the liability of Maryland Casualty.

### IV. LIABILITY OF NATIONAL VAN LINES AND TRANSPORT INDEMNITY

The final issue raised in this petition is the liability of National Van Lines and its insurer, Transport Indemnity Company, as the "contractor" of Eureka's interstate business. Section 904(a) of the LHWCA provides in relevant part:

> In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment.

National Van Lines is liable to Riley under this provision if, and only if, Eureka served as a subcontractor to National within the meaning of the statute. The ALJ ruled that Eureka was such a subcontractor of National Van Lines,[48] but this ruling was reversed by the Board.[49] The Board's decision is appealed to this court by petitioners Riley and the Director of OWCP.

### A

The basis for the Board's decision is not fully clear from its opinion. After setting out the law governing the imposition of workmen's compensation liability on general contractors,[50] the Board stated without further explanation:

> The relationship of National Van Lines and Eureka Van Lines[,] the Board concludes, is not the contractor-subcontractor relationship contemplated by Section 4 [33 U.S.C. § 904]. We agree with National Van Lines that Eureka was acting under an independent agency or contractor agreement * * *.

JA 57.

Ordinarily, our review of such decisions by the Board is limited: the decision will be affirmed unless it is unsupported by substantial evidence or inconsistent with applicable law.[51] Such deference is made difficult in this case by the failure of the Board to explain how its conclusion follows from its statement of the facts. Moreover, we

---

shall be notice to or knowledge of the carrier, (2) jurisdiction of the employer by a deputy commissioner, the Board, or the Secretary, or any court under this chapter shall be jurisdiction of the carrier, and (3) any requirement by a deputy commissioner, the Board, or the Secretary, or any court under any compensation order, finding, or decision shall be binding upon the carrier in the same manner and to the same extent as upon the employer.

**46.** *Id.*

**47.** There is some dispute over why Eureka failed to purchase broader coverage from Maryland Casualty. JA 8–10. The ALJ concluded, on the basis of conflicting testimony, that Riley, Sr., on behalf of Eureka,

> knowingly and intentionally purchased workmen's compensation insurance in Virginia only; * * * rejected coverage elsewhere;

* * * and did not refuse D.C. coverage because he was misled, or because he expected National [Van Lines] to provide it, but because it was more expensive, and not necessary to satisfy the law of his domicile, (Virginia). * * *

JA 14–15. This conclusion, based on evaluation of the credibility of testimony, is accepted by this court.

**48.** JA 44–45.

**49.** JA 57.

**50.** *See* 198 U.S.App.D.C. at ——, 613 F.2d at 987 *infra*.

**51.** *See* text and note at 22 *supra*.

should note that we are freer to undertake an independent examination of this portion of the case because the Director of OWCP opposes the Board's decision on the liability of National Van Lines and Transport Indemnity. *Cf. General Electric Co. v. Gilbert*, 429 U.S. 125, 144–145, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (difference in interpretation of Title VII by Equal Employment Opportunity Commission and Wage and Hour Administrator prevented the Court from strict deference to the appropriate agency). Since OWCP is the policymaking body in the area of workmen's compensation,[52] and since the Board's decision involves a policy judgment, we believe that this conflict between agencies necessitates a more searching review by this court.

### B

■ The "Agency Agreement" in effect between Eureka and National Van Lines at the time of Riley's accident did not employ the words "contractor" or "subcontractor" with respect to the parties.[53] Eureka was denominated an "agent" of National Van Lines; the agreement specifically disclaimed any employer-employee relation between National Van Lines and Eureka or its employees. Obviously, the terminology used in the agreement is not dispositive of this case.

Eureka did not possess an ICC Motor Carrier's license of its own. It therefore could not, and did not, transport cargo outside the Washington, D.C. metropolitan area except as an agent of National Van Lines. Eureka conducted its interstate haulage in the name of National Van Lines, in accordance with National's instructions expressed in a manual called the "Agent's Guide," in trucks decorated with National's name, colors, and insignia. Although Eure-

ka was not contractually obligated to accept any particular shipment for National's customers, in practice Eureka solicited orders for National and made extensive deliveries under National's direction. The contractual obligations for interstate haulage remained with National Van Lines, as did the right to payment. Although Eureka retained substantial discretion over the details of its operations, National reserved the right to train Eureka employees involved in performing National's contracts, and to reject employees who did not successfully complete this training.

■ This court has never interpreted the general contractor's liability provision of Section 904(a). In doing so now, we are guided by the experience of the many jurisdictions with similar provisions that have considered the question.[54] We are also guided by the purpose of the provision, which is to protect injured employees engaged in a common enterprise from the irresponsible failure of their immediate employers to insure. By imposing secondary liability on the general employer or contractor, the provision deters unscrupulous employers from dividing their work among a number of smaller, uninsured entities, and creates an incentive for the general employer to insist that his subcontractors be adequately insured.[55]

■ A general employer will be held secondarily liable for workmen's compensation when the injured employee was engaged in work either that is a subcontracted fraction of a larger project or that is normally conducted by the general employer's own employees rather than by independent contractors.[56] The most common form of the relationship—and that represented by the Eureka-National agreement—is

---

**52.** 20 C.F.R. §§ 1.1, 1.2 (1979); *id.* §§ 701.201, 701.202 (1978).

**53.** The facts surrounding the relationship between Eureka and National Van Lines are recounted in the original decision of the ALJ. JA 6–8. There is no significant dispute by the parties over the facts.

**54.** Forty-one states and the District of Columbia impose secondary liability for workmen's compensation upon general employers for the benefit of employees of contractors under them. 1B A. Larson, *supra* note 21, § 49.10 at 9–1 to 9–2.

**55.** *Id.* § 49.11 at 9–6 to 9–9.

**56.** *Id.* § 49.12 at 9–33.

where the general employer delegates the performance of portions of its contractual obligations to other firms.

For example, in *DeMola v. Riccio*, 61 App. Div.2d 854, 401 N.Y.S.2d 919 (3d Dep't 1978), the general employer, a towing company, contracted with the city to remove abandoned vehicles from the streets. It further arranged with a second towing company—the immediate employer of the injured worker—for the second company to perform some of the work in exchange for the right to the proceeds of the sale of the scrapped vehicles. This second firm was not adequately insured. When the injured employee sought further payments, the court held the general employer liable. In *Thorsheim v. State*, 469 P.2d 383, 388–389 (Alaska 1970), the court announced these two requirements for the relationship, under a statute substantially identical to the District of Columbia provision: (1) the existence of a contractual obligation on the part of a person held to be a contractor, and (2) a subletting of a part of that obligation to the person held to be a subcontractor.[57]

This statement of the law does not differ substantially from that expressed by the Board in its opinion. The Board said that Section 904 has been applied "in cases where a contractor entered into a contract with a third party to perform a service. The contractor then delegated its duties to the subcontractor." JA 57. The Board's error was not in its statement of the law, but in the application of that law to the facts of this case. National Van Lines contracted with various shippers to carry cargo interstate; it then delegated a portion of its contracts to Eureka. There is no doubt that Eureka employees performed work that would normally be performed by National Van Lines's own employees. Applying the generally accepted test for contractor liability, we must conclude that National Van Lines is liable under Section 904.

To accept the Board's conclusion would allow National Van Lines to avoid liability to workers performing National's contracts, even though National's subcontractor was inadequately insured. This would defeat the purpose of Section 904(a) and, more important, deny the benefit of the law to injured workers who need its protection.[58]

National Van Lines cannot complain of unfair surprise in this decision. In its agreement with Eureka, National required that Eureka obtain workmen's compensation insurance as required by law.[59] The reason National would impose such a requirement is to protect itself from liability under Section 904(a). National Van Lines could have avoided any Section 904(a) liability simply by ensuring that Eureka comply with the contract. Having failed to enforce its contractual rights, National may not now shift its loss to the hapless Riley.

## V. CONCLUSION

The decision of the Benefits Review Board, BRB Nos. 72–259, 259A, 259B, 7 B.R.B.S. 445 (Jan. 23, 1978), is reversed with respect to the liability of National Van Lines and its insurer, Transport Indemnity Company, to claimant James A. Riley, III. In all other respects the decision is affirmed.

*So ordered.*

TAMM, Circuit Judge, dissenting:

Despite the mental pole-vaulting of the majority, I am unable to agree with its decision in these cases.

57. *Accord, McCaskey v. Daniel International Corp.*, 422 F.Supp. 1360 (D.S.C.1977); *Jenkins v. Peddie*, 145 So.2d 729 (Fla.1962); *Evans v. Hawkins*, 114 Ga.App. 120, 150 S.E.2d 324 (1966); *Brygidyr v. Rieman*, 31 N.J.Super. 450, 107 A.2d 59 (N.J.1954).

58. National Van Lines has asserted that its relationship to Eureka was that of "owner" to contractor, based on the fact that National is the owner of the ICC license that Eureka used. Brief of respondent National Van Lines at 16. This argument is without merit. The "owner" cases are exemplified by the situation in which a property owner contracts with a contractor for services to the property. Obviously, the Eureka-National Van Lines agreement did not fit this pattern.

59. *Id.* at 7.

First, I cannot conclude that the workers' compensation statute of the District of Columbia, D.C.Code § 36–501 (1973), has any application to Petitioner Riley's injuries. At the time of the accident, Riley was a resident of Virginia. His principal place of employment was Virginia. His employer, Eureka, was a Delaware corporation that had its principal place of business in Virginia and directed Riley's activities from Virginia. National Van Lines, which had engaged Eureka as its agent, had its principal office in Illinois. The accident occurred in New York, after all goods shipped from the District of Columbia had been delivered. None of the facts in these cases suggests a connection to the District of Columbia that justifies applying its laws to Riley's claim. *See* Restatement (Second) of Conflict of Laws § 181 (1971).

Second, even if this matter did fall under the District of Columbia statute, this court would not have subject matter jurisdiction to hear these petitions for review. Section 21(c) of the Longshoremen's and Harbor Workers' Compensation Act provides for review "in the United States court of appeals for the circuit *in which the injury occurred* . . . ." 33 U.S.C. § 921(c) (1976) (emphasis added). The accident in the cases before us occurred in New York, which is in the Second Circuit, not this one. Review is proper there, not here. *See Home Indemnity Co. v. Stillwell*, 597 F.2d 87, 90 (6th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 145, 62 L.Ed.2d 94 (1979). Because this is a matter of jurisdiction, not venue, we should dismiss the petitions rather than acquiesce

in the parties' decision not to press the issue further.* *Cf. Atlantic Ship Rigging Co. v. McLellan*, 288 F.2d 589 (2d Cir. 1961) (predecessor to 33 U.S.C. § 921(c), which provided for initial review in the district court for the judicial district in which the injury occurred, confers jurisdiction; it does not concern simply venue); *Continental Fire & Casualty Insurance Co. v. O'Leary*, 236 F.2d 282 (9th Cir. 1956) (same).

Because District of Columbia law does not govern Riley's claim and because this court would not have subject matter jurisdiction to hear these petitions even if District of Columbia law were to apply, I respectfully dissent.

---

* On June 21, 1978, a panel of this court denied a motion by Respondents National Van Lines and Transport Indemnity to dismiss the petitions for want of jurisdiction. The panel nevertheless entered its order without prejudice to the movants' raising the issue again when the cases would be heard on the merits. *Director, Office of Workers' Compensation Programs v. National Van Lines, Inc.*, Nos. 78–1259, 78–1268 (D.C.Cir. June 21, 1978) (order per curiam). National Van Lines and Transport Indemnity earlier had indicated their willingness to withdraw their objections if the panel denied their motion. Reply to Response of the Director, Office of Workers' Compensation Programs, in Opposition to Motions to Dismiss (April 28, 1978). Thus, the parties neither

briefed this issue nor discussed it at oral argument. It is well settled, however, that the parties to an action cannot confer jurisdiction by consent; rather, it is our obligation to raise questions of jurisdiction sua sponte. *E. g., Mansfield, C. & L.M. Ry. v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); C. Wright, *Handbook of the Law of Federal Courts* § 8, at 18 (3d ed. 1976). *See* cases cited *id.* at 18 n.8. The doctrine of the law of the case does not prevent us from reopening this issue, for we are "duty-bound" to recognize our lack of jurisdiction, no matter how late. *Potomac Passengers Ass'n v. Chesapeake & O. Ry.*, 171 U.S. App.D.C. 359, 520 F.2d 91, 95 n.22 (D.C.Cir. 1975).