CALVIN–HUMPHREY et al., Appellees-
Petitioners,

v.

DISTRICT OF COLUMBIA, a Municipal
Corporation, et al., Appel-
lees-Respondents,

In Re Motion of Clarzell Green et al.,
Appellants-Proposed Intervenors.

No. 8306.

District of Columbia Court of Appeals.

Argued Sept. 11, 1974.

Decided June 23, 1975.

Gilbert Hahn, Jr., Washington D. C. with whom John R. Hailman, Washington D. C. was on the brief, for appellants.

Kenneth A. Pels, Asst. Corp. Counsel, for appellee District of Columbia. C. Francis Murphy, Corp. Counsel, Louis P.

Robbins, Principal Asst. Corp. Counsel, Henry E. Wixon, and Richard L. Aguglia, Asst. Corp. Counsels, Washington D. C. were on the brief, for appellee District of Columbia.

Harold Gordon, Washington D. C., with whom William T. Hannan, Washington D. C. was on the brief, for appellee Calvin-Humphrey Corp.

Walter H. Fleischer and Herbert Adelman, Washington D. C. entered an appearance for appellee River Park Mutual Homes, Inc.

Before KERN and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

KERN, *Associate Judge*:

The District of Columbia in imposing a tax upon realty within the city has followed for a number of years the practice of assessing commercial property at a different (and greater) percentage of market value than other real property.[1] Calvin-Humphrey Corporation (hereafter Calvin-Humphrey) and several other corporations brought suit on behalf of all city commercial property owners against the District and several of its officials seeking (1) a declaratory judgment that the practice of assessing commercial property at a higher percentage of market value than residential properties violates D.C.Code 1973, § 47–713[2] and the Fifth Amendment; (2) an injunction against the city's use in 1974 of this dual level of assessment or application to commercial properties of any level of assessment other than that used for residential properties until the city first complied with the D.C. Administrative Procedure Act in setting a different level of as-

---

1. Calvin-Humphrey alleged in its complaint that commercial properties were assessed at 65% of market value, while residential properties were assessed at a rate of from 40% to 60% of market value.

2. D.C.Code 1973, § 47–713 provides as follows:

> All real estate in the District of Columbia subject to taxation, including improvements thereon, shall be listed and assessed at not less than the full and true value thereof in lawful money.

sessment for *all* properties; and (3) recovery of a refund for excessive taxes paid in past years.[3]

Shortly after the suit was instituted the District and Calvin-Humphrey entered into a stipulation in which the District admitted that Calvin-Humphrey's suit was properly maintained as a taxpayer's suit in equity in the nature of a class action and agreed to take all steps necessary formally to set a single level of assessment for all properties in fiscal year 1975 and succeeding years.[4] The city has not denied that it did in fact use dual levels of assessment, and has taken the position in this litigation that such a practice violates both Section 47–713 and Fifth Amendment principles of equal protection of the laws.

Clarzell Green on behalf of himself and others (hereafter Green) sought by motion in the trial court to intervene as of right under Super.Ct.Civ.R. 24(a)(2) on the side of the District.[5] Green seeks to represent two classes of taxpayers: all owners of single family property in the District, and all District taxpayers except those represented by Calvin-Humphrey. Both of the original parties to the litigation pending in the trial court, *viz.*, Calvin-Humphrey and the District of Columbia, opposed Green's motion for intervention.

Green's principal contention in support of his effort to intervene is that the District has by its actions to date in the pending litigation failed to make any substantive defense to Calvin-Humphrey's suit. Specifically, Green argues, the Corporation Counsel has issued an opinion that the law requires a *uniform* level of assessment for purposes of the realty tax and the District has proceeded to promulgate a new rule setting a *uniform* level of assessment at 55% of market or cash value of realty. While Green acknowledges that the District is indeed defending Calvin-Humphrey's claim for a refund of past taxes paid by commercial real property owners, Green charges this defense rests *solely* on "technical grounds". Green asserts in support of his intervention that if Calvin-Humphrey is successful in its suit for a refund the taxes of one or both of the classes of taxpayers Green represents will inevitably be raised, or that municipal services rendered will inexorably be curtailed.[6] Green, if permitted to intervene, intends to urge the substantive ground that the dual assessment system employed by the District for so many years is valid.[7]

3. The proposed intervenors estimate that such refunds for the three-year period not barred by the statute of limitations would amount to $60 million. (Appellant's brief at 15.)

4. Calvin-Humphrey in return withdrew its motion for a preliminary injunction, thereby enabling the city to send out already-printed 1974 tax bills.

5. Green first sought to intervene on behalf of all owners of single family residential properties in the District of Columbia, in order to protect their relative tax advantage vis-a-vis commercial property owners. He wanted to defend the use of differing levels of assessment for residential and commercial properties and to that end sought to set aside the agreement between Calvin-Humphrey and the District which obligated the latter to set one uniform level of assessment. Since rulemaking procedures setting a single level of assessment at 55% have now been completed and 1975 tax rolls finalized, the focus of all parties has shifted to Calvin-Humphrey's claim for re-

funds. The question before the trial court is no longer whether the District may continue to use a dual level of assessment, but rather whether its past practice of doing so was unlawful and therefore provides a basis for refund of taxes already paid. In arguing the legality of that past practice Green now seeks to represent all taxpayers in the District other than those represented by Calvin-Humphrey.

6. In addition, residential property owners will be permanently deprived of the advantage they have enjoyed relative to commercial property owners.

7. Green would rely heavily upon Mr. Justice Frankfurter's opinion in *Nashville, Chattanooga and St. Louis Railway v. Browning*, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254 (1940), which upheld, against Fourteenth Amendment challenge, a state practice of assessing different kinds of property at different fractions of market value in spite of a state constitutional provision to the contrary:

*The equal protection clause did not write an empty formalism into the Constitution.*

The trial court denied Green's motion to intervene. It found that the single-family residential property owners had no litigable interest in the case since any harm to this class occurring from the outcome of the litigation between Calvin-Humphrey and the District was merely speculative, there being many other sources of revenue to which the District could turn to recoup the revenue lost by equalization of taxes or required to be refunded. As to the class of all taxpayers other than the commercial interests, the court found that no allegations to support representation of this class were contained in the pleadings,[8] and held that this class was adequately represented by the District.[9]

Super.Ct.Civ.R. 24(a)(2),[10] which has not since its amendment in 1966 been construed by this court, requires that one who seeks to intervene as of right must establish:

(1) That he has an interest in the transaction which is the subject matter of the suit, and

(2) that the disposition of the suit may as a practical matter impair his ability to protect that interest.

Intervention must be allowed if those two criteria are satisfied, unless

(3) his interest is adequately represented by existing parties.

In construing Rule 24 we are inclined to follow the United States Circuit Court for this jurisdiction [11] in eschewing any attempt precisely to define the nature of the "interest" required for intervention.[12] We do not think it profitable to our analysis of the problems posed by the Rule to search for any exact formula to limit the range of circumstances in which it could be applicable.[13] Rather we adopt the more

---

> *Deeply embedded traditional ways of carrying out state policy, such as those of which petitioner complains, are often tougher and truer law than the dead words of the written text.* . . . [S]o we are of opinion that such a discrimination, not invidious but long sanctioned and indeed conventional, would not be offensive to the Fourteenth Amendment simply because Tennessee had reached it by circuitous road. It is not the Fourteenth Amendment's function to uproot systems of taxation inseparable from the state's tradition of fiscal administration and ingrained in the habits of its people. [310 U.S. at 369–70, 60 S.Ct. at 972.] [Emphasis added.]

8. It appears from the record, however, that Green did file an amended motion to intervene which alleged representation of both classes of taxpayers.

9. Denial of leave to intervene as of right is a final order appealable immediately to this court. *Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 524–25, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947); *Nuesse v. Camp*, 128 U.S.App.D.C. 172, 177 n.2, 385 F.2d 694, 699 n.2 (1967).

10. Rule 24(a)(2) of the Superior Court Civil Rules provides:
   Upon timely application anyone shall be permitted to intervene in an action: . . .

when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

11. Superior Court Rule 24 is identical to Rule 24 of the Federal Rules of Civil Procedure.

12. The Supreme Court, in the three cases to date in which it has discussed Rule 24(a)(2), has made no attempt to define the parameters of the "interest" concept. See *Trbovich v. United Mine Workers*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967). In *Donaldson*, at 531, 91 S.Ct. 534, the Court stated, without elaboration, that the interest must be "significantly protectable", but this language, standing alone, does little to advance our understanding of the Rule.

13. See, e. g., *Hobson v. Hansen*, 44 F.R.D. 18, 24, 5 A.L.R. Fed. 497, 506 (D.D.C.1968) ("a direct, substantial, legally protectable interest in the proceedings.")

flexible and practical approach described by the Circuit Court as follows:

> We know of no concise yet comprehensive definition of what constitutes a litigable "interest" for purposes of standing and intervention under Rule 24(a). . . . We think a more instructive approach is to let our construction be guided by the policies behind the "interest" requirement. We know from the recent amendments to the civil rules that in the intervention area the "interest" test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process. . . . [*Nuesse v. Camp*, 128 U.S. App.D.C. 172, 178, 385 F.2d 694, 700 (1967).]

Properly applied, the Rule should promote judicial economy by facilitating the resolution of related issues in a single lawsuit, while preventing litigation from becoming unmanageably complex. *See Smuck v. Hobson*, 132 U.S.App.D.C. 372, 376, 408 F. 2d 175, 179 (1969).

■ In the instant case, we are persuaded that Green should have been allowed to intervene on behalf of the class of all D.C. taxpayers other than those represented by Calvin-Humphrey.[14] There can be no doubt but that the instant litigation "concerns" the class that Green represents: it has an economic interest of some magnitude in the outcome of the suit, since we perceive a distinct and substantial possibility that it will incur higher taxes or suffer a diminution of municipal services if Calvin-Humphrey prevails in its quest for a tax refund. There exists in addition a logical nexus between Green's interest as a taxpayer and the position he wishes to assert: that the use of the dual levels of assessment is lawful and constitutional, so that refunds are not due. The abandonment of the prior assessment practice has caused a shift in relative tax burden from the commercial property owners to other taxpayers as a whole. This tax advantage will be irretrievably lost if Calvin-Humphrey succeeds in the present action.[15] *See Atlantic Refining Co. v. Standard Oil Co.*, 113 U.S.App.D.C. 20, 304 F.2d 387 (1962).

■ Courts have historically greeted with trepidation the prospect of suits brought by taxpayers to vindicate their interests as such. The argument against taxpayer suits, pressed by appellants here, is that governmental action which affects *all* members of the community at large does not sufficiently affect any individual to give him standing to assert the rights of the whole. It must be noted, however, that taxpayers have always had the right, in the proper case, to initiate suit against the city government to prevent illegal use of municipal funds. *Roberts v. Bradfield*, 12 App.D.C. 453 (1898), *aff'd*, 175 U.S. 291, 20 S.Ct. 121, 44 L.Ed. 168 (1899). *See Massachusetts v. Mellon*, 262 U.S. 447, 486, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). The issue before this court, however, is not one of taxpayer *standing* to initiate lawsuits. The instant lawsuit was commenced by Calvin-Humphrey and the basic issue raised by it. The only question before us is whether the present lawsuit should be broadened to include the Green taxpayers, giving them an opportunity to be heard on an issue *already put in litigation*. *Smuck v. Hobson, supra*, 132 U.S.App.D.C. at 376, 408 F.2d at 179. Calvin-Humphrey having attacked the legality of the use of dual levels of assessment, and the District having refused to join issue on the question, we

---

14. Since Green's other proposed class, that of single-family residential property owners, is encompassed in the first class and represented by the same party, we need not decide whether Green should have been allowed to intervene on its behalf as well.

15. For the present, of course, the District has discontinued use of the dual levels of assessment. The Green taxpayers nonetheless have an interest in avoiding a judicial declaration of the unconstitutionality of that system, which would bar its future use by the city.

believe that the position sought to be asserted by the Green taxpayers should be heard, and that it can be heard most efficiently and effectively in the context of this litigation.[16]

■ Undoubtedly, taxpayer intervention in suits in which the government is a party should not lightly be granted.[17] In this case, however, we believe that intervention is appropriate. The subject on which intervention is sought bears a logical relationship to the proposed intervenors' status as taxpayers and is presented in the form of a concrete legal issue rather than simply a disagreement over policy. *Compare Hobson v. Hansen, supra,* 44 F.R.D. at 27–29, 5 A.L.R. Fed. at 509–13. In our view the focus in suits of this nature should not be on a rigid definition of the interest required for taxpayer intervention, but on the adequacy of representation afforded by municipal authorities.[18] In most cases we will presume that representation by such authorities is adequate, especially when the issue in controversy is one of policy vested in the discretion of the city government. *See* 3B J. Moore, Federal Practice ¶ 24.08[5] (2d ed. 1974) ; 7A C. Wright & A. Miller, Federal Practice and Procedure § 1908 at 499, § 1909 at 528–29 (1972). We will discuss below the adequacy of representation in this case.

The second requirement of Rule 24 is that the outcome of the suit may, as a practical matter, impair or impede the proposed intervenor's ability to protect his interest.

■ Taking a practical approach to this problem, it is likely that the outcome of this litigation will finally determine the disposition of the claim by Calvin-Humphrey for $60 million in tax refunds. In addition, it is likely that the question of the legality of the use of dual levels of assessment will be reached and decided in this case.[19] We must recognize first that the stare decisis effect of a decision alone may be a sufficient practical disadvantage to warrant intervention. *Nuesse v. Camp, supra; Atlantis Development Corp. v. United States,* 379 F.2d 818 (5th Cir. 1967). It would be difficult for the intervenor to secure a decision on the issue in any subsequent litigation contrary to the one to be reached in this case. In addition, we consider the difficulty which the intervenors would face in framing a separate lawsuit to present for adjudication the question at issue in the first lawsuit. *Smuck v. Hobson, supra.* The intervenors are seeking to defend the legality of the use of dual levels of assessment, and the only practical way for them to do so is in this suit, which seeks a declaration of the invalidity of the practice. Therefore, we feel that Green has also satisfied the second criteria of the rule.

We turn now to the final requirement of Rule 24, *viz.,* that the interest of the intervenor not be adequately represented by the existing parties.[20] We will indulge the

---

16. We agree with appellants that its interest would not be adequately protected by its appearance only as amicus curiae, a status both appellees appear willing to accept. Rather, the position it seeks to assert demands the ability to adduce evidence as well as to advance legal argument.

17. *See Arvida Corp. v. City of Boca Raton,* 59 F.R.D. 316 (S.D.Fla.1973). *But see Cleveland v. Cities Service Oil Co.,* 47 F.R.D. 543 (N.D.Ohio 1969).

18. We note that in a number of cases intervention on the side of the United States Government has been permitted when representation is found inadequate. *Trbovich v. United Mine Workers, supra; Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co., supra; Nuesse v. Camp, supra; Atlantic Refining Co. v. Standard Oil Co., supra.*

19. Calvin-Humphrey is claiming refunds on the ground that use of dual levels of assessment is unlawful. The trial court will be required to reach the issue if it rules against the District on the procedural and jurisdictional defenses which the city has raised.

20. We do not find it necessary in this case to decide where the burden of proof on this issue lies. *Compare Trbovich v. United Mine*

presumption in most cases that government officials adequately represent the public. We cannot agree with appellees in this case, however, that representation by the District must *always* be deemed adequate unless it can be shown that there is collusion betweeen the parties, that the interest of the representative is adverse to that of the intervenor, or that the representative has failed in his duty vigorously to prosecute or defend the suit. *See United States v. Board of School Commissioners,* 466 F. 2d 573 (7th Cir. 1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). The Supreme Court has in our view rejected such a rigid approach to the representation requirement. In *Trbovich v. United Mine Workers, supra,* the Court held it was unnecessary for the proposed intervenor to demonstrate that the public official on whose side he wished to intervene had failed in fulfillment of his statutory duty of representation. It was sufficient in that case that the representative was under two duties which might dictate different approaches to the litigation, and that the intervenor wanted to assert grounds in addition to those asserted by the representative.[21]

The United States Court of Appeals for the District of Columbia Circuit has found inadequate representation where the intervenor wants to assert a different or additional ground in support of the representative's position, *Atlantic Refining Co. v. Standard Oil Co., supra;* or to represent a narrower interest, *Smuck v. Hobson, supra;* or a broader interest, *Nuesse v. Camp, supra,* than does the original party.

The District of Columbia government must represent the interest of *all* taxpayers and of the community at large, *including that of the commercial taxpayers represented by Calvin-Humphrey,* and it is not in this case representing the narrower interest of the *Green* taxpayers in preserving their relative tax advantage vis-a-vis the commercial property taxpayers. More importantly, the city has chosen not to assert, on a concrete question of law, a defense to support their common interest in preventing the award of refunds which the intervenors wish to present to the trial court. On the particular facts of this case, we cannot say that the intervenors are adequately represented by the District government, notwithstanding its good faith belief that it is acting in the best interest of the city at large.

Accordingly, the amended motion for leave to intervene should have been granted, and the trial court erred in denying it. The order appealed from is reversed and the case remanded for further proceedings.[22]

*So ordered.*

---

*Workers, supra,* 404 U.S. at 538 n. 10, 92 S.Ct. 630, with *Nuesse v. Camp, supra,* 128 U.S.App.D.C. at 180, 385 F.2d at 702.

21. In *Trbovich,* a union member was allowed to intervene in an action brought by the Secretary of Labor to set aside a union election, even though the Secretary was required by statute to represent the interests of all union members in such proceedings. The Court found that the Secretary was also under a duty to represent the public interest in free union elections, and that as a result he might not adequately represent the interest of a union member who wanted to argue for remedies in addition to those proposed by the Secretary.

22. The District points out in its brief that Green has not moved to certify its suit as a class action, and suggests that he cannot fulfill the notice requirement imposed by Rule 23 of the Superior Court Civil Rules. We note that Rule 23 (the equivalent of Rule 23 of the Federal Rules of Civil Procedure) does not apply in the Tax Division of the trial court, where this action is presently pending. The question whether the intervenor should be allowed to proceed on behalf of a class will be before the trial court on remand.