**DISTRICT OF COLUMBIA, Appellant,**

v.

**The GREATER WASHINGTON CENTRAL LABOR COUNCIL, AFL–CIO, Appellee,**

**Food and Allied Service Trades Council of Metropolitan Washington, Intervenor.**

**The GREATER WASHINGTON BOARD OF TRADE, Appellant,**

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

**Nos. 80–1311, 80–1312.**

District of Columbia Court of Appeals.

Argued April 24, 1981.

Decided Jan. 28, 1982.

---

Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, Washington, D. C., was on the briefs, for appellant in No. 80–1311 and appellees in No. 80–1312.

Joseph H. Koonz, Jr., Washington, D. C., with whom Mark J. Brice and Patrick M. Regan, Landover, Md., were on the brief, for appellee in No. 80–1311.

Mark L. Schaffer, Washington, D. C., with whom James A. Mannino and James F. Green, Washington, D. C., were on the brief, for intervenor.

John R. Risher, Jr., Washington, D. C., with whom Stanley J. Brown and Judith A. Malone, Washington, D. C., were on the briefs, for amicus curiae in No. 80–1311 and appellant in No. 80–1312.

Thomas D. Wilcox, Washington, D. C., was on the brief for the Alliance of American Insurers, American Insurance Association, and National Association of Independent Insurers, as amici curiae.

Before HARRIS and PRYOR, Associate Judges, and GALLAGHER, Associate Judge, Retired.

PRYOR, Associate Judge:

This case presents the issue of whether the District of Columbia Council exceeded its legislative authority under the District of Columbia Self-Government and Governmental Reorganization Act, D.C.Code 1981, §§ 1–201 et seq., (Self-Government Act), when it enacted the District of Columbia Workers' Compensation Act of 1979, D.C.Law 3–77, 27 D.C.Reg. 2503 (1980) (codified at D.C.Code 1981, §§ 36–301 et seq.), and repealed the existing workmen's compensation legislation applicable to the private sector in the District of Columbia. The trial court concluded that it did. In addition, we are asked to decide whether the trial court abused its discretion in denying the Greater Washington Board of Trade's motion for leave to intervene in the action below. We conclude that the trial court erred in ruling that the Council exceeded its authority in enacting the Workers' Compensation Act, and that the trial court did not abuse its discretion in denying Greater Washington Board of Trade's motion to intervene. Accordingly, we reverse in part and affirm in part.

I

An understanding of several pertinent statutes is necessary to our analysis of the Council's enactment of the Workers' Compensation Act. Before reaching the issue of whether the Council exceeded its legislative authority in passing the Workers' Compensation Act, we review the history of workmen's compensation in the District of Columbia, the Self-Government Act, and the new District of Columbia Workers' Compensation Act.

A. *The Longshoremen's and Harbor Workers' Compensation Act*

Since 1928, workmen's compensation for the District of Columbia has been governed by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* (1976) (Longshoremen's Act). In 1927, in response to the continuing concern about compensation for maritime workers injured on navigable waters, Congress enacted the Longshoremen's Act, "a modern and reasonable workmen's compensation law for certain local maritime workers who are injured while loading or unloading or repairing vessels at the dock—provided their injury occurs while on board the vessel." S.Rep.No.852, 70th Cong., 1st Sess. 1 (1928).

The Longshoremen's Act vests the responsibility for the administration of the workmen's compensation program in the United States Secretary of Labor. 33 U.S.C. § 939 (1976). The administrative procedure provided by the Act consists of a three-tier system. At the first stage, a deputy commissioner issues a recommendation as to whether the workmen's compensation claim should be paid. *Id.,* § 919(a)–(c). At this point, either party may request a formal hearing before a Department of Labor administrative law judge. *Id.,* § 919(d) (Supp. III 1979). Review of the administrative law judge's formal order is provided by the Benefits Review Board. *Id.,* § 921(b) (1976, Supp. III 1979). Persons adversely affected by the final order of the Benefits Review Board may appeal to the United States Court of Appeals for the circuit in which the injury occurred. *Id.,* § 921(c) (1976). In the event that an em-

ployer fails to comply with a compensation award, the beneficiary of the award or the deputy commissioner making the order may seek enforcement in the Federal district court for the judicial district in which the injury occurred. *Id.*, § 921(d) (1976).

Although public employees of the District of Columbia government were protected by a federal workmen's compensation program at the time of the passage of the Longshoremen's Act, *see* 5 U.S.C. § 8139 (1976), no similar program existed for their counterparts in the local private sector. Between 1921 and 1926, several bills creating workmen's compensation programs for private employees in the District of Columbia were introduced in Congress. However, "disagreements over the system of insurance and the plan of administration led to a legislative deadlock." S.Rep.No.852, 70th Cong., 1st Sess. 1 (1928). Recognizing that the Longshoremen's Act provided a solution to its inability to agree on a program to cover private employees in the District of Columbia, *see generally id.*, at 2; H.R.Rep. No.859, 69th Cong., 1st Sess. 1 (1926), Congress passed a workmen's compensation law for the District of Columbia, Act of May 17, 1928, ch. 612, § 1–3, 45 Stat. 600 (1928) (Workmen's Compensation Act of 1928) (codified at D.C.Code 1973, §§ 36–501, –502), which extended the provisions of the federal statute to cover the private employment sector. Section 36–501 provided in pertinent part:

> The provisions of chapter 18 of title 33, U.S.Code, including all amendments that may hereafter be made thereto, shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs. . . .

This section incorporated both the substantive and procedural provisions of the Longshoremen's Act. *Director, Office of Workers' Compensation Programs v. National Van Lines, Inc.*, 198 U.S.App.D.C. 239, 246, 613 F.2d 972, 979 (1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3049, 65 L.Ed.2d 1136 (1980).

### B. *The Self-Government Act*

The United States Constitution vests Congress with the exclusive legislative authority for the District of Columbia. U.S. Const. art. I, § 8, cl. 17. In 1973, Congress passed the Self-Government Act to "relieve Congress of the burden of legislating upon essentially local District matters." D.C. Code 1981, § 1–201(a). Subject to its retention of the ultimate legislative authority over the District of Columbia, Congress delegated certain specific legislative powers to the District of Columbia government. *Id.* These legislative powers "extend to all rightful subjects of legislation within the District consistent with the Constitution of the United States and the provisions of [the] Act . . . ." *Id.*, § 1–204. Congress expressly reserved its right

> to exercise its constitutional authority as legislature for the District, by enacting legislation for the District on any subject, whether within or without the scope of legislative power granted to the Council by [the] Act, including legislation to amend or repeal any law in force in the District prior to or after enactment of [the] Act and any act passed by the Council. [*Id.*, § 1–206.]

In addition, Congress placed several explicit limitations on the Council's legislative authority. The specific limitations which are pertinent to the issue before us are enumerated in § 1–233:

> (a) The Council shall have no authority to pass any act contrary to the provision of this Act except as specifically provided in this Act, or to—
>
> \*    \*    \*    \*    \*    \*
>
> (3) [e]nact any act, or enact any act to amend or repeal any Act of Congress, which concerns the functions or property of the United States or which is not restricted in its application exclusively in or to the District;
>
> (4) [e]nact any act, resolution, or rule with respect to any provision of Title 11 [of the District of Columbia Code] (relating to organization and jurisdiction of the District of Columbia courts);
>
> \*    \*    \*    \*    \*    \*

(8) [e]nact any act or regulation relating to the United States District Court for the District of Columbia or any other court of the United States in the District other than the District courts, or relating to the duties or powers of the United States Attorney or the United States Marshal for the District of Columbia[.]

(b) Nothing in this Act shall be construed as vesting in the District government any greater authority over the National Zoological Park, the National Guard of the District of Columbia, the Washington Aqueduct, the National Capital Planning Commission, or, except as otherwise specifically provided in this Act, over any federal agency, than was vested in the Commissioner prior to January 2, 1975.

### C. *Workers' Compensation Act of 1979*

On May 6, 1980, the District of Columbia Council passed the Workers' Compensation Act of 1979. Following the approval of Mayor Marion S. Barry, Jr., this legislation was forwarded to Congress on May 15, 1980, for the 30-day review period required by D.C.Code 1981, § 1–233(c)(1). On July 1, 1980, in the absence of congressional disapproval, the Workers' Compensation Act officially became law. *See* 27 D.C.Reg. 2974 (1980). Pursuant to § 47 of the Act, it was scheduled to take effect on October 1, 1981.

The Workers' Compensation Act provides an administrative scheme for compensation claims in the private sector of employment. See *generally* 27 D.C.Reg. 2503 (1980). It provides compensation for work-related injuries or death to employees of private businesses principally located in the District of Columbia. D.C.Code 1981, § 36–303. Any party in interest adversely affected by a compensation award entered by the Mayor may petition for review to the District of Columbia Court of Appeals. *Id.,* § 36–322(b)(3). If an employer fails to comply with a compensation order, the beneficiary of the award or the Mayor may seek its enforcement in the Superior Court of the District of Columbia. *Id.,* § 36–322(c). Section 46 of the Act repeals the existing

workmen's compensation law, enacted by Congress in 1928 to cover private employees in the District of Columbia.

### II

On July 15, 1980, the Greater Washington Central Labor Council, AFL–CIO, an organization comprised of over 150 unions representing workers regularly employed in the Washington metropolitan area, and three employees from the private sector, brought suit against the District of Columbia government seeking a declaratory judgment as to the validity of the Workers' Compensation Act and injunctive relief against its enforcement. Both parties filed motions for summary judgment. On September 26, 1980, the trial court ruled that the Workers' Compensation Act was null and void as violative of §§ 1–233(a) and (b) of the Self-Government Act. The court, however, denied without prejudice the application for injunctive relief.

First, the trial court noted that in the absence of an existing federal workmen's compensation law, it well might have "conclude[d] that the Council had the power to fill the vacuum by appropriate legislation." In light of Congress' failure to repeal the existing legislation, however, the trial court held that Congress had not empowered the Council to effect such a repeal and a transfer of powers. The court noted that, under the Self-Government Act, Congress expressly provided for the transfer of public employment services from the United States Department of Labor to the District of Columbia government, carefully detailing the mechanics of transfer and scrupulously safeguarding the employment rights of federal employees then engaged in that function. The trial judge concluded that Congress' express transfer of workers' compensation for government employees to the District of Columbia, coupled with its failure to effect a similar transfer of workmen's compensation for private employees, created an inference that Congress did not wish to repeal the federal legislation relating to private workmen's compensation.

Furthermore, the court found that the new law violated several of the explicit limitations on the District's legislative authority embodied in §§ 1–233(a) and (b) of the Self-Government Act. The court ruled that the City Council violated § 1–233(a)(3) (prohibiting the local legislature from amending or repealing any act of Congress concerning the functions or property of the United States), § 1–233(a)(4) (prohibiting the Council from enacting any act, resolution or rule affecting the organization or jurisdiction of the local District of Columbia courts), § 1–233(a)(8) (prohibiting any act or regulation relating to the United States federal courts in the District) and § 1–233(b) (limiting the authority of the District government over any federal agency to that vested in the Commissioner prior to January 2, 1975).

## III

Appellants contend that the trial court erred in declaring the Workers' Compensation Act null and void. We agree that the Council acted within its delegated authority when it enacted the Workers' Compensation Act.

### A. *Statutory Interpretation*

■ The trial court acknowledged that as part of the Self-Government Act, Congress transferred certain functions of the Secretary of Labor with respect to public employment services for the District of Columbia to the local government. The court reasoned that since Congress expressly provided for the transfer of those services, but did not provide for the transfer of the Department of Labor's administration of private workmen's compensation claims, its intention was to preclude the Council from interfering with the latter.

The express transfer by Congress of certain public employment services from the United States Department of Labor to the District government, in the absence of a concurrent transfer of private employment workmen's compensation, however, does not reflect a congressional intent to prohibit the local government from legislating with respect to private workmen's compensation.

Rather, the transfer of the public workmen's compensation program to the District of Columbia required express congressional legislation since it was entrusted to the Department of Labor by a federal statute that is not applicable exclusively to the District of Columbia. *See* 5 U.S.C. §§ 8101 *et seq.* (1976); D.C.Code 1981, § 1–233(a)(3). On the other hand, the existing workmen's compensation program for private employees, the Workmen's Compensation Act of 1928, is a congressionally enacted local statute that deals exclusively with District of Columbia matters. Consequently, no express congressional legislation is required to effect the transfer. *See* Part B, *infra.*

Nothing in the language or the legislative history of the Self-Government Act indicates Congress' intent to prohibit the District from enacting legislation concerning workmen's compensation for the private sector. The absence of an express transfer of private workmen's compensation to the District of Columbia government indicates that Congress chose not to transfer the administration of private workmen's compensation at that time. It does not indicate an intention to preclude local legislation pertaining to workmen's compensation for private employees at a later time under the legislative authority granted to the District of Columbia pursuant to D.C.Code 1981, § 1–204.

### B. *Review of § 1–233(a)(3)*

■ The trial court ruled that the Workers' Compensation Act violated § 1–233(a)(3) of the Self-Government Act, which prohibits the Council from "enact[ing] any act to amend or repeal any Act of Congress, which concerns the functions or property of the United States or which is not restricted in its application exclusively in or to the District." The court reasoned that since the United States Department of Labor has been responsible for administering the local workmen's compensation program, and the federal courts are charged with enforcing and reviewing workmen's compensation claims, the repeal of D.C.Code 1973, § 36–501, affected a function of the United States.

Although the Self-Government Act does not define the term "functions of the United States" as used in § 1–233(a)(3), it reasonably may be surmised from the language "which is not restricted in its application exclusively in or to the District . . ." that Congress intended in § 1–233(a)(3) to withhold from local officials the authority to affect or to control decisions made by federal officials in administering federal laws that are national in scope as opposed to laws that relate solely to the District of Columbia. We are not persuaded that Congress intended that performance of a local function by federal officials prior to the Self-Government Act would transform the function into a "function of the United States" for purposes of § 1–233(a)(3).

The legislative history further suggests that the language was inserted to safeguard the operations of the federal government on the national level:

> The functions reserved to the federal level would be those related to federal operations in the District and to property held and used by the Federal Government for conduct of its administrative, judicial, and legislative operations; and for the monuments pertaining to the nation's past. The functions would include physical planning of these federal areas, construction and maintenance of federal buildings, and administration of federal park areas . . . . [House Comm. on The District of Columbia, 93d Cong., 2d Sess., D.C. Executive Branch Proposal for Home Rule Organic Act 182 (Comm. Print 1973).] [1]

Thus, what Congress sought to protect by inserting this limitation was the integrity of the federal domain as it relates to administration of federal legislation having national implications.

The Workmen's Compensation Act of 1928 is a local law enacted by Congress which was restricted in its application "exclusively in or to the District," rather than a federal law which is national in scope. When Congress extended the coverage of the Longshoremen's Act to include private employees in the District of Columbia, it did not establish a local administrative authority. Rather, for purposes of convenience, the Secretary of Labor was given the authority to administer the District of Columbia compensation program. See 33 U.S.C. § 939(b) (1976); S.Rep.No.852, 70th Cong., 1st Sess. 2 (1928). Despite the Secretary of Labor's participation in the administration of D.C.Code 1973, § 36–501, the Act always has been regarded by the courts as a "local act" and construed as a state law. See generally *Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 266, 100 S.Ct. 2647, 2653, 65 L.Ed.2d 757 (1980) (plurality opinion); *Cardillo v. Liberty Mutual Insurance Co.,* 330 U.S. 469, 476, 67 S.Ct. 801, 806, 91 L.Ed. 1028 (1947); *Director, Office of Workers' Compensation Programs v. National Van Lines, Inc., supra,* 198 U.S.App.D.C. at 245 n.20, 613 F.2d at 978 n.20. In distinguishing the Longshoremen's Act from the local workmen's compensation program which it encompasses, the United States Court of Appeals for the District of Columbia Circuit stated in *Gudmundson v. Cardillo,* 75 U.S. App.D.C. 230, 234, 126 F.2d 521, 525 (1942):

> The case we have does not arise under the Longshoremen's Act, though doubtless it might if the injury had occurred on a vessel in the Potomac River, tied to a Washington dock. True enough, the language and provisions of the national Act are made applicable to the District, but the two Acts are wholly separate and distinct, for the reason that in the one Congress was exercising the judicial pow-

---

1. *See also D.C. Government Organization: Hearings on Self-Determination for the District of Columbia,* Part 2, 93d Cong., 1st Sess. 52 (1973) (statement of John Nevius, former Chairman of the District of Columbia City Council):

> For the purposes of identifying these Federal functions, we are speaking basically of three things: First, the function regarding Federal

buildings and properties; second, the conduct of Federal business—and there you get into the whole complicated matter of Federal functions versus local functions or Federal interests versus local interests, admittedly not easy to distinguish—and third, the function of international relations and matters concerning the diplomatic corps.

ers conferred under Art. III, whereas in the other—the local act—Congress was exercising the powers granted in Sec. 8 of the Art. I, and these powers, . . . include . . . the powers of the State[,] . . . a delegation which . . . embraces full and unlimited jurisdiction . . . to provide for the general welfare of citizens within the District of Columbia . . . .

Moreover, it should be noted that no federal funds are involved in the Department of Labor's administration of § 36–501. Rather, the administrative cost is paid with District of Columbia funds. *See* D.C.Code 1978 Supp., § 36–503 ("There are authorized to be appropriated such sums as may be necessary to pay the expenses incurred by the United States Department of Labor in the administration of this chapter.")

Thus, the Secretary of Labor administers two separate workmen's compensation programs. The first of these, created by the Longshoremen's Act, is a national program passed by Congress in discharge of its Article I powers; the second, the Workmen's Compensation Act of 1928 was enacted as a local law pursuant to the plenary authority of Congress over the District of Columbia. U.S.Const. art. I, § 8, cl. 17; *Gudmundson v. Cardillo, supra,* 75 U.S.App.D.C. at 234, 126 F.2d at 525.[2] Therefore, we find that the function performed by the Secretary of Labor in the administration of § 36–501 is a purely local one. Consequently, we conclude that the trial court erred in ruling that § 1–233(a)(3) was violated by the enactment of the District of Columbia Workers' Compensation Act of 1979.

### C. *Review of § 1–233(a)(4)*

█ The trial court also held that the Council increased the jurisdiction of the District of Columbia courts in violation of § 1–233(a)(4) of the Self-Government Act by vesting the Superior Court with the right to enforce compensation awards and this court with the authority to review final compensation orders. *See* D.C.Code 1981,

§§ 36–322(b)(3), (c). Section 1–233(a)(4) of the Self-Government Act states that "[t]he Council shall have no authority to . . . [e]nact any act . . . with respect to any provision of Title 11 [of the District of Columbia Code] (relating to organization and jurisdiction of District of Columbia courts) . . . ." We find that the local legislature did not affect impermissibly the jurisdiction of the local courts by enacting the Workers' Compensation Act.

Section 36–322(c) of the Workers' Compensation Act gives the Superior Court authority to use its equitable powers to enforce compensation awards. Under D.C. Code 1981, § 11–921(a), "the Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District of Columbia." *See Andrade v. Jackson,* D.C.App., 401 A.2d 990, 992 (1979). Within the general equitable powers of the court is the authority to enforce orders of the Mayor and of administrative agencies. Thus, the enforcement of a compensation order of the Mayor or the administrative agency delegated the authority to issue such an order would fall within the equitable jurisdiction presently vested in the Superior Court.

Similarly, the jurisdiction of this court would not be expanded impermissibly by § 36–322(b)(3) of the Act. That section provides for judicial review of compensation orders pursuant to the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code 1981, §§ 1–1501 to –1529. As stated in D.C.Code 1981, § 11–722, "[t]he District of Columbia Court of Appeals has jurisdiction . . . to review orders and decisions . . . in accordance with the District of Columbia Administrative Procedure Act . . . ." In *Capitol Hill Restoration Society, Inc. v. Moore,* D.C.App., 410 A.2d 184, 186 (1979), we acknowledged that our jurisdiction to review administrative actions under the Administrative Procedure Act must arise in the form of a "contested case" as

---

2. The repeal of D.C.Code 1973, §§ 36–501, –502 and *id.,* 1978 Supp., § 36–503, by the Council has no impact on the functions of the United States Department of Labor in the ad-

ministration of the Longshoremen's Act as it relates to the maritime industry nationally. The Council neither amended nor repealed any provision of that Act.

defined in the DCAPA.[3] "Under our decisions, in order for a matter to be a contested case, it must involve a trial-type hearing which is required either by statute or by constitutional right." *Capitol Hill Restoration Society, Inc., supra,* 410 A.2d at 187. Review by this court of final decisions relating to compensation orders rendered by the Mayor would arise under the contested case provision of the DCAPA because § 36–322(b) of the Workers' Compensation Act provides that the Mayor shall order that a "hearing" be conducted upon application of any party. Accordingly, this court will review compensation claims by virtue of its preexisting jurisdiction to review administrative proceedings. Therefore, the Workers' Compensation Act does not violate § 1–233(a)(4) of the Self-Government Act.

### D. *Review of § 1–233(a)(8)*

█ The trial court also found that § 1–233(a)(8) of the Self-Government Act was violated by enactment of the Workers' Compensation Act since under the Longshoremen's Act the United States district courts have authority to enforce compensation awards and the United States courts of appeals have the authority to review final compensation orders. *See* 33 U.S.C. §§ 921(c), (d) (1976). Section 1–233(a)(8) prohibits the Council from passing any legislation relating to the local federal district court or any other court of the United States in the District of Columbia. We conclude that the trial court erred in ruling that the jurisdiction of the federal courts impermissibly was affected by the Workers' Compensation Act.

In 1970, Congress enacted the District of Columbia Court Reform and Criminal Procedure Act, D.C.Code 1981, §§ 11–101 *et seq.* (Court Reform Act), to establish a dual court system in this jurisdiction similar to the state court systems. *Thompson v. United States,* 179 U.S.App.D.C. 76, 79 n.14, 548 F.2d 1031, 1034 n.14 (1976). It was Congress' intention to alleviate the Article III

courts' burden of adjudicating local matters and thus to permit those courts to devote their attention to matters having national implications. *Palmore v. United States,* 411 U.S. 389, 408–09, 93 S.Ct. 1670, 1681–82, 36 L.Ed.2d 342 (1973). The Court Reform Act established the District of Columbia Court of Appeals and the Superior Court of the District of Columbia and vested these courts with the authority to decide legal issues which solely affect the District of Columbia. *See, e.g., Andrade v. Jackson, supra,* 401 A.2d at 992 ("in establishing [a] unified local court system, Congress divested the federal courts of jurisdiction over local matters, restricting those courts to those matters generally viewed as federal business, . . . and conferred upon the Superior Court the jurisdictional power to adjudicate local civil actions.") (footnote omitted); *Reichman v. Franklin Simon Corp.,* D.C.App., 392 A.2d 9, 12–13 (1978) ("D.C. Code 1973, § 11–921 gives the superior court plenary jurisdiction over civil matters brought in the District of Columbia, and correspondingly limits the civil jurisdiction of the District Court to those special matters of which District Courts nationwide may take cognizance.") (footnote omitted). By repealing the Workmen's Compensation Act of 1928, the Council has not decreased the jurisdiction of the United States courts in the District of Columbia. Workmen's compensation for the private employment sector in the District of Columbia is a "local matter" over which the Council has authority to legislate and the local courts have jurisdiction to adjudicate. The Council's action merely repealed the congressional incorporation of a national law into local statutes. The United States courts retain their jurisdiction to hear claims arising under the Longshoremen's Act. Thus, by enacting the Workers' Compensation Act, the local legislature did not redefine the authority of the federal courts to rule on workmen's

---

**3.** D.C.Code 1981, § 1–1502(8), provides in pertinent part:

The term "contested case" means a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specif-

ic parties are required by any law . . . or by constitutional right, to be determined after a hearing before the Mayor or before an agency . . . .

compensation claims under the Longshoremen's Act in violation of § 1–233(a)(8).

### E. *Review of § 1–233(b)*

■ As another basis for striking down the workmen's compensation legislation enacted by the Council, the trial court ruled that § 1–233(b) of the Self-Government Act was violated when the Council eliminated a function performed by the Department of Labor under the Longshoremen's Act. Section 1–233(b) states in part: "Nothing in this Act shall be construed as vesting in the District government any greater authority over . . . any federal agency, than was vested in the Commissioner prior to January 2, 1975." In enacting this provision, Congress sought to protect the federal interest by "prohibit[ing] the Council from exceeding its present authority over . . . any other Federal agency." House Comm. on the District of Columbia, 93d Cong., 2d Sess., Title VI–Reservation of Congressional Authority 1477 (Comm. Print 1973). We fail to see, however, how the Council's action in enacting local workmen's compensation legislation offends that provision of the Self-Government Act.

Enactment of the Workers' Compensation Act neither increases nor decreases the District's authority over the Department of Labor. The sole effect this legislation has on the Department of Labor is that one category of cases presently handled by that agency—namely, private sector workmen's compensation claims arising in the District of Columbia—no longer will be administered by the Secretary of Labor. However, in light of the congressional mandate to vest the local government with authority to legislate on local matters, the ability of the Council to enact local legislation which decreases the workload of federal agencies presently charged with local responsibilities does not constitute a proscribed exercise of authority over such agencies within the meaning of § 1–233(b).

## IV

■ The Greater Washington Board of Trade, an incorporated trade association representing 1,400 retail and commercial firms doing business in the District of Columbia, also appeals the trial court's denial of its application to intervene. The Board sought intervention as of right,[4] or in the alternative, permissive intervention.[5] Although the court rendered its decision on the validity of the Workers' Compensation Act on September 26, 1980, the Board of Trade did not seek to intervene until a week after the court's ruling. Despite this delay, the court did not base its decision on the timeliness factor. *See Vale Properties, Ltd. v. Canterbury Tales, Inc.*, D.C.App., 431 A.2d 11, 15 (1981); *Emmco Insurance Co. v. White Motor Corp.*, D.C.App., 429 A.2d 1385, 1386–88 (1981). Rather, as to Super.Ct.Civ.R. 24(a) (intervention of right), denial was premised upon the court's finding that appellant's interest was adequately represented by the District of Columbia. It stated:

> A careful review of the position taken by the intervenors does not reveal any conflict of interest or any essential difference in their position from that taken by the District of Columbia. What distinctions do exist involve primarily rhetorical differences, shifts in emphasis or variations in the choice of supporting authori-

---

**4.** Super.Ct.Civ.R. 24(a) states in part:

Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*See Vale Properties, Ltd. v. Canterbury Tales, Inc.*, D.C.App., 431 A.2d 11, 14–15 (1981); *Cal-*

*vin-Humphrey v. District of Columbia*, D.C. App., 340 A.2d 795, 798 (1975).

**5.** Super.Ct.Civ.R. 24(b) provides in pertinent part:

Upon timely application anyone may be permitted to intervene in an action: * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

ties. Nothing in the moving papers submitted by the Intervenors convinces the Court that it should act otherwise than it has already done, or that it should alter or amend the position already taken in this cause. * * * The fact that the Court ultimately disagrees with the Defendant's [the District of Columbia's] position in no way diminishes the Court's respect for that position, nor the Court's conviction that the applicant's interest has been, is, and will be adequately and ably represented by the District of Columbia.

The court went on to rule that the circumstances presented did not warrant a different result with respect to Super.Ct.Civ.R. 24(b) (permissive intervention).

The Board of Trade contends that the trial court erred in denying its application for leave to intervene as of right, because the interest represented by the District government was different from the interest it sought to represent. Appellant asserts that the interest represented by the District involved only the general governmental interest of defending a local legislative enactment, while the Board sought to represent the peculiar economic interests of its constituency. The Board argues that since neither of the parties below presented any evidence bearing on the economic impact of the existing law on local employers, nor developed the legislative history of the Longshoremen's Act to the extent the Board sought to, it should have been allowed to present these matters to the court's attention.

In reviewing the denial of a motion to intervene as of right, we will reverse only if we conclude that a timely appellant was entitled to intervene as of right. *Vale Properties, Ltd. v. Canterbury Tales, Inc.,* supra, 431 A.2d at 14. In *Calvin-Humphrey v. District of Columbia,* D.C.App., 340 A.2d 795, 800 (1975), we stated that in cases in which the government is a party, the right to intervene on the side of the government should not be granted lightly, for "[i]n most cases we will presume that representation by such authorities is adequate, especially when the issue in controversy is one of

policy vested in the discretion of the city government." The Board of Trade did not make the kind of showing necessary under *Calvin-Humphrey* to overcome the presumption that the District adequately was representing its interest. Appellant sought neither to assert a different claim or defense nor to obtain an outcome different from that sought by the District. We conclude that the Board of Trade and the District government sought to present the same claim, *i.e.,* the authority of the Council to legislate on workmen's compensation for the private employment sector, and that appellant's interest was represented adequately by the government.

The Board of Trade attempted to present evidence concerning the economic impact of the Longshoremen's Act on local employers, as well as some legislative materials, to justify the action taken by the Council with respect to the Workers' Compensation Act. There is no indication that such data would have had any impact upon the decision of the trial court. The authority of the local legislature to enact the Workers' Compensation Act is derived solely from the Self-Government Act, regardless of the Act's effect on annual premiums paid by employers for workmen's compensation insurance. Moreover, as to the additional legislative materials proffered by the Board of Trade, we note that in considering whether to grant its application to intervene, the trial court reviewed that material and nevertheless found nothing to change the position it already had taken in the case. The trial court did not err in denying the Board of Trade's application for intervention as of right pursuant to Super.Ct.Civ.R. 24(a). Furthermore, given the facts and circumstances of this case, the court did not abuse its discretion in denying appellant permissive intervention under Super.Ct.Civ.R. 24(b).

*Affirmed in part; reversed in part.*