Ricky L. McCONNELL, a.k.a. Ricky R. McConnell, Appellant,

v.

UNITED STATES, Appellee.

No. 86–1450.

District of Columbia Court of Appeals.

Argued Dec. 11, 1987.
Decided Feb. 18, 1988.

---

Leslie B. Holt, Washington, D.C., appointed by this court, for appellant.

Page Kennedy, with whom James Klein and Maureen T. Cannon, Washington, D.C., were on the brief, for amicus curiae Public Defender Service of Washington, D.C., on behalf of appellant.

Michael W. Farrell, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Robertson L. Park, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., for amicus curiae District of Columbia.

Before FERREN and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

FERREN, Associate Judge:

Appellant Rickey L. McConnell pled guilty to one count of distribution of heroin, D.C. Code § 33–541(a)(1) (1987 Supp.), and was sentenced to the mandatory-mini-

mum term of imprisonment of four to twelve years under D.C. Code § 33–541(c)(1)(A) (1987 Supp.). He now appeals from that sentence, contending the trial court erred in refusing to consider committing him to treatment under the federal Narcotic Addicts Rehabilitation Act of 1966 (NARA), 18 U.S.C. §§ 4251–55 (1985), in lieu of imposing the mandatory-minimum prison term. We agree that the trial court erred. We therefore must remand for resentencing with an instruction that the trial court consider committing appellant to treatment under NARA.

**I.**

■ The single issue presented by this appeal is whether commitment to treatment under NARA remains a sentencing alternative for a defendant-addict who has been convicted under the District of Columbia's Uniform Controlled Substances Act of 1981 (UCSA) but is ineligible for UCSA's own addict exception because of a previous drug-related conviction. UCSA's addict exception is the only statutory exception to the mandatory-minimum terms of imprisonment set forth in the statute. The addict exception, by its terms, is inapplicable if the addict has previously been convicted of "knowingly or intentionally manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance...." D.C.Code § 33–541(c)(2) (1987 Supp.). NARA, in contrast, allows commitment of addicts to treatment despite one

prior conviction.[1] Although NARA is a federal statute generally applicable to federal defendants "convicted of an offense against the United States," 18 U.S.C. § 4251(f), NARA historically has been available to judges of the District of Columbia Superior Court as a sentencing alternative for individuals convicted under District law, *see, e.g., Mulky v. United States,* 451 A.2d 855 (D.C.1982); *Prince v. United States,* 432 A.2d 720 (D.C.1981); *Jacobs v. United States,* 399 A.2d 38 (D.C. 1979); *Fludd v. United States,* 336 A.2d 539 (D.C.1975), since crimes committed in the District are considered crimes against the United States. *Metropolitan Railroad Co. v. District of Columbia,* 132 U.S. 1, 9, 10 S.Ct. 19, 22, 33 L.Ed. 231 (1889).[2]

**A.**

■ In response to a voter initiative, UCSA was amended to incorporate the mandatory-minimum sentencing provisions and related addict exception. The amendment made no reference to NARA, let alone to the intended effect of the mandatory-minimum sentence and the addict exception on the availability of NARA as a sentencing alternative. Nonetheless, the terms of the mandatory-minimum sentence provisions and the addict exception under UCSA are, on their face, in conflict with the applicable NARA provisions, since second-time offenders may be eligible for treatment as addicts under NARA but not under the amended UCSA.[3] In view of this

1. An addict becomes ineligible under NARA if the offender "has been convicted of a felony on two or more prior occasions." 18 U.S.C. § 4251(f)(4) (1985).

2. Congress repealed NARA effective November 1, 1987. Pub.L. 98–473, Title II, §§ 218(a)(6), 235, 98 Stat. 2027, 2031 (Oct. 12, 1984), *as amended by* Pub.L. 99–217, § 4, 99 Stat. 1728 (Dec. 26, 1985). The issue presented in this appeal, however, is not moot. Because eligibility for commitment and treatment under NARA is determined by the date of the offense, not the date of sentencing, NARA will remain available as a sentencing alternative for all those defendants, not yet sentenced, who are or have been convicted of crimes occurring before the effective date of repeal.

3. The Public Defender Service (PDS), as *amicus curiae,* contends in its brief that the relevant

provisions of NARA and of UCSA may be read as parallel, alternative sentencing schemes not in conflict with one another. We are unpersuaded. Although, as PDS correctly observes, NARA has as its primary focus the treatment of drug offenders, while UCSA's mandatory-minimum sentencing scheme is directed to punishment, UCSA's addict exception clearly addresses the same governmental concerns that NARA addresses. The addict exception under UCSA exempts from the statute's stringent sentencing requirements addicts who, in the court's determination, are found to have committed the offense solely to support their own drug dependency. Like NARA, UCSA's addict exception is designed to provide an alternative to traditional incarceration and punishment for certain offenders who suffer from drug addiction. Thus, the class of offenders potentially eligible for exception from USCA's mandatory-minimum

conflict, we must ascertain whether the amendment to UCSA could and did effect an implied repeal of the federal NARA provisions with which it conflicts. We conclude that the amendment lawfully could not, and thus did not, repeal NARA as applied to the District of Columbia.

### B.

■ Under a provision of the District of Columbia Self–Government and Governmental Reorganization Act (Home Rule Act), D.C.Code § 1–233(a)(3) (1981), the Council of the District of Columbia, as well as the voters of the District exercising their right of initiative, are precluded from enacting any law that would "amend or repeal any Act of Congress ... which is not restricted in its application exclusively in or to the District." [4] *Id.* NARA, however, in addition to applying to defendants convicted under District of Columbia law, applies to federal defendants in every jurisdiction in the United States. 18 U.S.C.

sentences—addicts—is the same class of offenders potentially eligible for treatment under NARA. It follows that, insofar as UCSA and NARA define the class of eligible addicts differently, the two laws conflict.

PDS cites a series of cases decided by the United States Court of Appeals for the District of Columbia Circuit in which NARA has been deemed available as a sentencing option despite the fact that a federal mandatory-minimum prison term under the Harrison Narcotics Act would otherwise apply. *See Watson v. United States,* 141 U.S.App.D.C. 335, 439 F.2d 442 (1970) (en banc); *United States v. Harmon,* 158 U.S.App.D.C. 287, 485 F.2d 1066 (1973); *United States v. Moore,* 158 U.S.App.D.C. 375, 486 F.2d 1139, *cert. denied,* 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973); *United States v. Williams,* 157 U.S.App.D.C. 355, 484 F.2d 835 (1973). As counsel for the government aptly noted in oral argument, however, the historical relationship of the Harrison Act and NARA—both Congressional enactments—is quite different from the historical relationship between NARA and UCSA. Congress enacted NARA as part of a comprehensive legislative effort in the early 1970s to update and perfect the federal statutory scheme dealing with drug offenders. Congress clearly intended, in enacting NARA, to supplant, with respect to addicts, the old scheme of punishment set forth in the Harrison Act's mandatory-minimum sentencing requirements with the newer notions of treatment set forth in NARA. UCSA, however, enacted by the District of Columbia, expressed no legislative intent to change or supplant previously-enacted congressional legislation. Indeed, as we hold in this opinion, the District of Columbia had no authority to affect NARA's application. Furthermore, we read the cited cases as supporting the conclusion that NARA is, in fact, the federal analogue to UCSA's addict exception; NARA creates an alternative for addicts to the otherwise-applicable mandatory-minimum sentences provided under federal law just as UCSA's addict exception creates an alternative, for eligible addicts, to its own mandatory-minimum terms. That the two statutes are analogous, however, in no way supports the conclusion that they are not in conflict. On the contrary, since the two statutes purport to accomplish the same objective, and yet accomplish it differently, there is a clear conflict between these incongruous statutory provisions.

4. The legislative history of the District of Columbia Self–Government and Governmental Reorganization Act (Home Rule Act), under which Congress granted to the District of Columbia certain legislative powers of self-government, elucidates the meaning of D.C.Code § 1–233(a)(3) (1981). Debate during both the House Subcommittee and Full Committee markups of the Home Rule bill reflected a clear intent to limit the power of the Council of the District of Columbia (and the District voters, by initiative) to legislation of local matters only. *See Home Rule for the District of Columbia 1973–74, Background and Legislative History of H.R. 9056, H.R. 9682 and Related Bills Culminating in the District of Columbia Self–Government and Governmental Reorganization Act,* ("*Home Rule Legislative History*") at 467 and 1035–37. As evidenced by the following statement of the Delegate from the District of Columbia during the Full Committee markup of the Home Rule Act, Congress intended matters not exclusively related to the District of Columbia to be beyond the District's legislative reach:

> MR. FAUNTROY—[G]iven the language which is part of the Title VII dealing with the reservations of Congressional authority, ... we make it very clear that the Congress or the Council shall have no authority to pass any act contrary to the provisions of this act and among them it lists and under Item 3, it states "enact any act, or enact any act to amend or repeal any Act of Congress, which concerns the functions or property of the United States or which is not restricted in its application exclusively in or to the District[.]"

*Home Rule Legislative History* at 1036–37. For additional discussion of the history and effect of the Home Rule Act, codified at D.C.Code §§ 1–201 *et seq., see Convention Center Referendum Committee v. District of Columbia Board of Elections and Ethics,* 441 A.2d 889 (D.C.1981) (en banc); *District of Columbia v. Greater Washington Central Labor Council,* 442 A.2d 110, 113, *reh'g denied,* 445 A.2d 960 (D.C.1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983).

§ 4251(f). In *District of Columbia v. Greater Washington Central Labor Council,* 442 A.2d 110, 113, *reh'g denied,* 445 A.2d 960 (D.C.1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983), we made clear that, although the Council, under § 1–233(a)(3), may repeal a congressionally-enacted statute limited in application to the District of Columbia, the Council may not repeal a federal statute of broader application. In that case, we approved the Council's repeal of a workers' compensation statute enacted by Congress, codified in the District of Columbia Code, and applicable only to private businesses in the District; but, we suggested that the Council would lack authority to repeal or amend the federal workers' compensation statute codified in the United States Code and applicable to the public sector both in the District of Columbia and in other jurisdictions. *Id.* at 115. Consistent with our reasoning in *Greater Washington Central Labor Council,* we conclude that the District had no authority to repeal or amend the federal statute at issue here.

### C.

The District of Columbia argues that, although NARA is applicable to federal offenders nationwide, NARA's reach with respect to offenders convicted under District of Columbia law is limited in scope to the District. Accordingly, says the District, when Congress included the District of Columbia under NARA, Congress was acting, in effect, as a local legislative body. Therefore, the District argues, consistent with the provisions of the Home Rule Act, District voters had the right to repeal NARA as applied to the District. *See* D.C. Code § 1–233(a)(3). We disagree; Congress' legislative personality cannot be fragmented in that way. There is no distinct chapter of NARA applicable to the District of Columbia; the same language

applicable to federal offenders is applicable to offenders under District law. 18 U.S.C. §§ 4251 *et seq.* Thus, Congress did not change legislative roles, from federal to local, when it enacted the language making NARA applicable to the District. Rather, Congress, in its role as national legislature, merely extended the scope of national legislation—NARA—to embrace offenders convicted under local law in the seat of the nation's government. The District of Columbia is not authorized to repeal legislation national in scope, notwithstanding that the repeal would affect enforcement of the legislation only within the District's jurisdiction. D.C.Code § 1–233(a)(3); *Greater Washington Central Labor Council,* 442 A.2d at 116. It follows, therefore, that the amendments to UCSA at issue here could not—and did not—work an effective repeal of any of the provisions of NARA, including those in conflict with the amended UCSA.

### II.

■ Because the amendment to UCSA did not effect the repeal of any aspect of NARA, commitment to treatment under NARA remains a sentencing alternative for all NARA-eligible offenders convicted under UCSA. Thus, the trial court erred in concluding that it had no discretion to consider committing appellant to treatment under NARA in lieu of sentencing appellant to imprisonment for the mandatory-minimum term.[5] Accordingly, we vacate appellant's sentence and remand the case to the trial court for resentencing, with an instruction to consider committing appellant to treatment under NARA.

*Remanded.*

---

**5.** Of course, the availability of NARA as a sentencing alternative does not dictate that every eligible offender must receive NARA treatment. We note that, in this case, the trial court indicated its inclination to commit appellant for treatment under NARA but believed itself constrained by the terms of UCSA from doing so. Our decision today removes that obstacle and

permits the trial court, on remand, to impose which ever sentencing alternative it may determine is most appropriate in appellant's case. The choice among available sentencing options is a matter left to the sound discretion of the trial court. *Fludd v. United States,* 336 A.2d 539, 541 (D.C.1975).